No. 21-51145

In the

# United States Court of Appeals for the Fifth Circuit

LA UNION DEL PUEBLO ENTERO; FRIENDSHIP-WEST BAPTIST
CHURCH; THE ANTI-DEFAMATION LEAGUE AUSTIN, SOUTHWEST,
AND TEXOMA; SOUTHWEST VOTER REGISTRATION EDUCATION
PROJECT; TEXAS IMPACT; MEXICAN AMERICAN BAR ASSOCIATION
OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION;
JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; JAMES LEWIN;
FIEL HOUSTON, INCORPORATED; MI FAMILIA VOTA; MARLA LOPEZ;
PAUL RUTLEDGE,
*Plaintiffs-Appellees*,

v.

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS
GOVERNOR OF TEXAS; ET AL,
*Defendants*,

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN
PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE,
*Movants-Appellants.*

(captions continued on inside cover)

On Appeal From The United States District Court
For The Western District Of Texas

## APPELLANTS' OPENING BRIEF

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Stephen J. Kenny
JONES DAY
51 Louisiana Ave., NW
Washington, DC  20001-2113
(202) 879-3939
jmgore@jonesday.com

December 20, 2021

*Counsel for Movants-Appellants*

**OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS; REVUP-TEXAS; TEXAS ORGANIZING PROJECT; WORKERS DEFENSE ACTION FUND,**

*Plaintiffs-Appellees,*

v.

**JOSE A. ESPARZA, IN HIS OFFICIAL CAPACITY AS DEPUTY SECRETARY OF THE STATE OF TEXAS; ET AL,**

*Defendants,*

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,**

*Movants-Appellants.*

**HOUSTON JUSTICE; DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON AREA URBAN LEAGUE; THE ARC OF TEXAS; JEFFREY LAMAR CLEMMONS,**

*Plaintiffs-Appellees,*

v.

**GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL,**

*Defendants,*

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,**

*Movants-Appellants.*

(captions continued on next page)

**LULAC TEXAS; VOTE LATINO; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT ,**
*Plaintiffs-Appellees,*

v.

**JOSE ESPARZA, IN HIS OFFICIAL CAPACITY AS THE TEXAS DEPUTY SECRETARY OF STATE; ET AL,**
*Defendants,*

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,**
*Movants-Appellants.*

**MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL RUTLEDGE,**
*Plaintiffs-Appellees,*

v.

**GREGORY ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL,**
*Defendants,*

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,**
*Movants-Appellants.*

**UNITED STATES OF AMERICA ,**
*Plaintiffs-Appellees,*

v.

**STATE OF TEXAS; ET AL,**
*Defendants,*

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,**
*Movants-Appellants.*

## CERTIFICATE OF INTERESTED PERSONS

### No. 21-51145, *La Union Del Pueblo Entero, et al.* v. *Gregory W. Abbott, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Movants-Appellants:

- Harris County Republican Party
- Dallas County Republican Party
- Republican National Committee
- National Republican Senatorial Committee
- National Republican Congressional Committee

2.    Counsel for Movants-Appellants:

- John M. Gore
- E. Stewart Crosland
- Stephen J. Kenny
- Jones Day

3.    Plaintiffs-Appellees:

- La Union Del Pueblo Entero
- Friendship-West Baptist Church
- The Anti-Defamation League Austin, Southwest, and Texoma Regions
- Southwest Voter Registration Education Project
- Texas Impact

- Mexican American Bar Association Of Texas
- Texas Hispanics Organized For Political Action
- Jolt Action
- William C. Velasquez Institute
- Fiel Houston Inc.
- Isabel Longoria
- James Lewin
- Mi Familia Vota
- Marla Lopez
- Marlon Lopez
- Paul Rutledge
- Houston Justice
- Houston Area Urban League
- Delta Sigma Theta Sorority Inc.
- The Arc of Texas
- Jeffrey Lamar Clemmons
- LULAC Texas
- Vote Latino
- Texas Alliance for Retired Americans
- Texas AFT
- OCA-Greater Houston
- League of Women Voters of Texas
- REVUP-Texas
- Texas Organizing Project
- Workers Defense Action Fund
- United States of America

4.     Counsel for Plaintiffs-Appellees La Union Del Pueblo Entero, Southwest Voter Registration Education Project, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Action, Jolt Action, William C. Velasquez Institute, and Fiel Houston Inc.:

- Nina Perales
- Michael C. Keats

- Rebecca L. Martin
- Jessica M. Choi
- Christopher Bell
- Kevin Zen
- Mexican American Legal Defense & Education Fund
- Fried, Frank, Harris, Shriver & Jacobson LLP

5.     Counsel for Plaintiffs-Appellees Friendship-West Baptist Church, Anti-Defamation League Austin, Southwest, and Texoma Regions, Texas Impact, Isabel Longoria, and James Lewin:

- Sean Morales-Doyle
- Eliza Sweren-Becker
- Patrick A. Berry
- Andrew B. Garber
- Elizabeth Y. Ryan
- Paul R. Genender
- Matthew Berde
- Megan Cloud
- Alexander P. Cohen
- Weil, Gotshal & Manges LLP
- Brennan Center for Justice
- Brennan Center for Justice at NYU Law School

6.     Counsel for Plaintiff-Appellee Isabel Longoria:

- Christian P. Menefee
- Jonathan Fombonne
- Tiffany Bingham
- Sameer Birring
- Radiah Rondon
- Susannah Mitcham
- Office of the Harris County Attorney

7.     Counsel for Plaintiffs-Appellees Mi Familia Vota, Marla Lopez, Marlon Lopez, and Paul Rutledge:

- Ben Clements
- Laura E. Rosenbaum
- Wendy J. Olson
- Courtney M. Hostetler
- Elijah M. Watkins
- John Bonifaz
- Marc T. Rasich
- Ronald A. Fein
- Sean Michael Lyons
- Free Speech for People
- Stoel Rives LLP
- Lyons & Lyons, PC

8.     Counsel for Plaintiffs-Appellees Houston Justice, Houston Area Urban League, Delta Sigma Theta Sorority Inc., The Arc of Texas, and Jeffrey Lamar Clemmons:

- Georgina Yeomans
- J. Keely Dulaney
- Jennifer A. Holmes
- Kathryn Sadasivan
- Kenneth E. Broughton, Jr.
- Lora Spencer
- Sarah M. Cummings
- Shira Wakschlag
- NAACP Legal Defense & Education Fund, Inc.
- Reed Smith LLP
- The Arc of the United States

9.     Counsel for LULAC Texas, Vote Latino, Texas Alliance for Retired Americans, and Texas AFT:

- Domingo A. Garcia
- Graham White
- John Russell Hardin
- Jonathan Patrick Hawley
- Joseph N. Posimato
- Kathryn E. Yukevich
- Marc Erik Elias
- Meaghan E. Mixon
- Uzoma N. Nkwonta
- Elias Law Group LLP
- Perkins Coie, LLP

10.     Counsel for Plaintiffs-Appellees OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project, and Workers Defense Action Fund:

- Adriel Cepeda-Derieux
- Andre I. Segura
- Hani Mirza
- Jerry Vattamala
- Jessica Ring Amunson
- Lia Sifuentes Davis
- Lucia Romano Ostrom
- Mimi M.D. Marziani
- Patrick Stegemoeller
- Ryan V. Cox
- Samantha Osaki
- Savannah Kumar
- Sophia Lin Lakin
- Susana Lorenzo-Giguere
- Thomas Paul Buser-Clancy

- Urja Mittal
- Ari Savitzky
- Ashley Alcantara Harris
- American Civil Liberties Union Foundation
- Texas Civil Rights Project
- Asian American Legal Defense And Education Fund
- Jenner & Block LLP
- Disability Rights Texas
- ACLU Foundation of Texas

11.    Counsel for Plaintiff-Appellee United States of America:

- Daniel Joshua Freeman
- Jennifer Jaeseon Yun
- Michael Elliot Stewart
- Richard Alan Dellheim
- Thomas Christian Herren , Jr.
- Dana Paikowsky
- Erin Helene Flynn
- Katherine Elmlinger Lamm
- U.S. Department of Justice

12.    Defendants

- Gregory W. Abbott, Governor of Texas
- John B. Scott, Texas Secretary of State
- Jose A. Esparza, Former Acting Texas Secretary of State
- Warren K. Paxton, Attorney General of Texas
- Lupe C. Torres, Medina County Elections Administrator
- Lisa Wise, El Paso County Elections Administrator
- Isabel Longoria, Harris County Elections Administrator
- Jacque Callanen, Elections Administrator of Bexar County
- Yvonne Ramon, Hidalgo County Elections Administrator
- Michael Scarpello, Dallas County Elections Administrator
- Dana DeBeauvoir, Travis County Clerk

13.    Counsel for Defendants Gregory W. Abbott, John B. Scott, Jose A. Esparza, and Warren K. Paxton:

- Patrick K. Sweeten
- Jeffrey Michael White
- Eric A. Hudson
- Office of the Texas Attorney General

14.    Counsel for Defendant Lupe C. Torres:

- Chad Ennis
- Robert E. Henneke
- Texas Public Policy Foundation

15.    Counsel for Defendant Lisa Wise:

- Angelica Lien Leo
- Beatriz Mejia
- Christine Sun
- Germaine Habell
- Kathleen Hartnett
- Kelsey Spector
- Orion Armon
- Ranjana Natarajan
- Sharon Song
- Zack Goldberg
- Cooley LLP
- States United Democracy Center

16.    Counsel for Defendant Isabel Longoria:

- Jonathan Fombonne
- Sameer Birring
- Office of the Harris County Attorney

17.    Counsel for Defendant Jacque Callanen:

- Robert D. Green
- Bexar County District Attorney

18.    Counsel for Defendant Yvonne Ramon:

- Josephine L. Ramirez
- Leigh Ann Tognetti
- Hidalgo County District Attorney's Office

19.    Counsel for Defendant Michael Scarpello:

- Barbara S. Nicholas
- Ben L. Stool
- Dallas County District Attorney's Office

20.    Counsel for Defendant Dana DeBeauvoir:

- Anthony J. Nelson
- Leslie W. Dippel
- Patrick T. Pope
- Sherine Elizabeth Thomas
- Travis County Attorney's Office

21.    Amicus Foundation For Government Accountability

22.    Counsel    for    Amicus    Foundation    For    Government
Accountability:

- Donna Garcia Davidson
- Chase Martin
- Stewart Whitson

23.    Proposed Intervenor Public Interest Legal Foundation

24.   Counsel for Proposed Intervenor Public Interest Legal Foundation:

- Andy Taylor
- Maureen Riordan
- Kaylan L. Phillips

Dated: December 20, 2021          Respectfully submitted,

*/s/ John M. Gore*
_____

*Counsel of Record for Movants-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and (f) and Fifth Circuit Rule 28.2.3, Appellants Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee respectfully request oral argument. This case involves novel and important issues arising under Federal Rule of Civil Procedure 24. Oral argument would substantially aid the Court in its resolution of the case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................. x

TABLE OF AUTHORITIES ................................................... xii

JURISDICTIONAL STATEMENT ........................................... 1

STATEMENT OF ISSUE ..................................................... 1

INTRODUCTION ............................................................. 1

STATEMENT OF THE CASE ................................................ 3

I.   The Republican Committees ............................................ 3

II.  SB 1 .................................................................. 7

III. The Consolidated Litigation ........................................... 10

SUMMARY OF ARGUMENT ............................................... 14

ARGUMENT ................................................................ 16

I.   THE COURT SHOULD GRANT THE REPUBLICAN
     COMMITTEES INTERVENTION OF RIGHT ............................... 17

     A.   The Republican Committees Satisfy Rule 24(a)'s
          Requirements For Intervention Of Right ............................. 17

          1.   The Republican Committees' Motion Was Timely ........... 18

          2.   The Republican Committees Have Interests
               Relating To SB 1 ............................................ 18

          3.   The Republican Committees' Ability To Protect
               Their Interests May Be Impaired By This Action............. 26

          4.   No Party To The Case Adequately Represents
               The Republican Committees' Interests In SB 1 ............... 33

     B.   The District Court Reversibly Erred In Denying The
          Republican Committees Intervention Of Right ....................... 40

CONCLUSION ............................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

C<span>ASES</span>

*Black Fire Fighters Ass'n of Dall. v. City of Dallas*,
    19 F.3d 992 (5th Cir. 1994)......................................................20, 24, 30

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014)...................................................... *passim*

*Burdick v. Takushi*,
    504 U.S. 428 (1992) .............................................................................21

*City of Houston v. Am. Traffic Sols., Inc.*,
    668 F.3d 291 (5th Cir. 2012).......................................................19, 24

*Clark v. Putnam Cnty.*,
    168 F.3d 458 (11th Cir. 1999).............................................................36

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) .............................................................................31

*Dillard v. Chilton Cnty. Comm'n*,
    495 F.3d 1324 (11th Cir. 2007) (per curiam) ....................................36

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996) (en banc)................................1, 19, 24, 30

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989) .............................................................................21

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ............................................................35

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999)................................................................26

*In re Sierra Club*,
    945 F.2d 776 (4th Cir. 1991)................................................................36

*Issa v. Newsom*,
    No. 20-cv-1044, 2020 WL 3074351
    (E.D. Cal. June 10, 2020)............................................................ *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*League of United Latin Am. Citizens,*
   *Dist. 19 v. City of Boerne,*
   659 F.3d 421 (5th Cir. 2011)..........................................................20, 24

*Meek v. Metro. Dade Cnty.,*
   985 F.2d 1471 (11th Cir. 1993)............................................................36

*Mi Familia Vota v. Abbott,*
   977 F.3d 461 (5th Cir. 2020)................................................................38

*Paher v. Cegavske,*
   No. 20-cv-00243, 2020 WL 2042365
   (D. Nev. Apr. 28, 2020) ....................................................23, 28, 30, 31

*Priorities USA v. Benson,*
   448 F. Supp. 3d 755 (E.D. Mich. 2020) ..............................................30

*Purcell v. Gonzalez,*
   549 U.S. 1 (2006)..................................................................................31

*Shays v. FEC,*
   414 F.3d 76 (D.C. Cir. 2005)..................................................21, 22, 29

*Sierra Club v. City of San Antonio,*
   115 F.3d 311 (5th Cir. 1997)..................................................................1

*Sierra Club v. Espy,*
   18 F.3d 1202 (5th Cir. 1994)................................................................36

*Tex. Democratic Party v. Abbott,*
   978 F.3d 168 (5th Cir. 2020)................................................................38

*Texas v. United States,*
   805 F.3d 653 (5th Cir. 2015)........................................................*passim*

*Trbovich v. United Mine Workers of Am.,*
   404 U.S. 528 (1972) .............................................................................33

*Utah Ass'n of Cntys. v. Clinton,*
   255 F.3d 1246 (10th Cir. 2001)............................................................36

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

28 U.S.C. § 1291 ............................................................... 1

52 U.S.C. § 30101 .......................................................... 5, 6

Tex. Elec. Code § 33.001 ....................................... 3, 4, 25, 43

Tex. Elec. Code § 33.003 ....................................... 3, 4, 25, 43

**OTHER AUTHORITIES**

Dallas County Republican Party (Homepage) .......................... 4

Dallas County Republican Party,
    *DCRP Events Calendar – Details: Poll Watcher Training* ............... 4

Fed. R. Civ. P. 24 ............................................... *passim*

Harris County GOP, *Become A Volunteer* ........................ 4, 25

Harris County GOP, *Take Action Now* ................................. 3

S.B. 1, 87th Leg., 2d Spec. Sess. (Tex. 2021) ................ *passim*

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the district court's order denying Appellants' motion to intervene (ROA.4138–4145) under 28 U.S.C. § 1291 and the collateral order doctrine.  *See, e.g.*, *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc); *Sierra Club v. City of San Antonio*, 115 F.3d 311, 313–14 (5th Cir. 1997).

## STATEMENT OF ISSUE

Whether the district court erred in denying intervention of right to Appellants, who are political party committees, in cases seeking to invalidate Texas election laws under which Appellants and Appellants' voters, candidates, volunteers, and poll watchers exercise their constitutional rights to vote and participate in elections in Texas.

## INTRODUCTION

This litigation consolidates six lawsuits challenging Texas Senate Bill No. 1 ("SB 1"), the recent high-profile amendment to the Texas Election Code.  Plaintiffs—which comprise five groups of private plaintiffs and the United States—allege that several provisions of SB 1 violate the U.S. Constitution and/or federal law and, thus, seek an

injunction prohibiting Defendants and the State of Texas from enforcing those provisions.

Appellants Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee (collectively, the "Republican Committees") maintain that SB 1 is a commonsense and constitutional statute that, together with other provisions of the Texas Election Code, advances the right to vote, accommodates voters, and protects the integrity of Texas elections. The Republican Committees have a cognizable interest in the rules under which they and their voters, members, candidates, volunteers, and poll watchers exercise their constitutional rights to vote and participate in elections in Texas. That unique interest would be impaired by the invalidation of SB 1 that Plaintiffs seek—and it is not shared, much less represented, by any party to the litigation.

Accordingly, the Republican Committees timely moved to intervene as defendants in this consolidated litigation. The district court denied the motion. The district court's denial gave short shrift to the Republican Committees' cognizable interests, contravened this Court's controlling

precedents, and was tainted by legal error. The Court should reverse the decision below and grant the Republican Committees intervention.

## STATEMENT OF THE CASE

### I.     The Republican Committees

*Harris County Republican Party*.  The Harris County Republican Party promotes and assists Republican candidates in Harris County, Texas.  It has made significant contributions and expenditures to support Republican candidates during many election cycles and is doing so again in 2022.

The Harris County Republican Party works to accomplish this purpose by, among other things, devoting substantial resources towards educating, mobilizing, assisting, training, and turning out voters, volunteers, and poll watchers in Harris County.  *See, e.g.*, Harris County GOP, *Take Action Now*, https://bit.ly/3pDazuW (last visited Dec. 16, 2021).  In accordance with Texas law, the Harris County Republican Party also expends significant resources to recruit, train, and appoint poll watchers "to observe the conduct of . . . election[s]" in Texas.  Tex. Elec. Code § 33.001; *see also id.* § 33.003 (authorizing "each [county] political party that has one or more nominees on the ballot" to "appoint

watchers"); Harris County GOP, *Become A Volunteer*, https://bit.ly/3DtAM3G (last visited Dec. 16, 2021).

*Dallas County Republican Party*. The Dallas County Republican Party promotes and assists Republican candidates in Dallas County, Texas. It has made significant contributions and expenditures to support Republican candidates during many election cycles and is doing so again in 2022.

The Dallas County Republican Party works to accomplish this purpose by, among other things, devoting substantial resources towards educating, mobilizing, assisting, training, and turning out voters, volunteers, and poll watchers in Dallas County. *See, e.g.*, Dallas County Republican Party, https://bit.ly/3rD5lBJ (last visited Dec. 16, 2021). In accordance with Texas law, the Dallas County Republican Party also expends significant resources to recruit, train, and appoint poll watchers "to observe the conduct of . . . election[s]" in Texas. Tex. Elec. Code § 33.001; *see also id.* § 33.003 (authorizing "each [county] political party that has one or more nominees on the ballot" to "appoint watchers"); Dallas County Republican Party, *DCRP Events Calendar – Details: Poll Watcher Training*, https://bit.ly/3rEyMU4 (last visited Dec. 16, 2021).

*Republican National Committee.*    The Republican National Committee ("RNC") is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14).  The RNC manages the Republican Party's business at a national level, including development and promotion of the Party's national platform and fundraising and election strategies; supports Republican candidates for public office at all levels across the country, including those on the ballot in Texas; and assists state and local parties throughout the country, including in Texas, to educate, mobilize, assist, and turn out Republican voters, candidates, volunteers, and poll watchers.    The RNC has made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing voters and volunteers in Texas in the past many election cycles and is already doing so again for the 2022 election cycle.

*National Republican Senatorial Committee.*    The National Republican Senatorial Committee ("NRSC") is the national senatorial committee of the Republican Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect Republican candidates to the U.S. Senate from across the United States, including from Texas.  It works to accomplish

this mission in Texas by, among other things, providing direct and indirect financial contributions and support to candidates and other Republican Party organizations; providing technical and research assistance to Republican candidates and party organizations; engaging in voter registration, voter education, and voter turnout programs; and conducting other Republican party-building activities, including funding recruiting, education, and support activities for poll watchers. The NRSC has made significant contributions and expenditures in support of Republican congressional candidates in Texas in many past election cycles and will do so again in 2024.

*National Republican Congressional Committee*. The National Republican Congressional Committee ("NRCC") is the national congressional committee of the Republican Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect Republican candidates to the U.S. House of Representatives from across the United States, including from Texas. It works to accomplish this mission in Texas by, among other things, providing direct and indirect financial contributions and support to candidates and other Republican Party organizations; providing technical and research assistance to Republican candidates and party

organizations; engaging in voter registration, voter education, and voter turnout programs; and conducting other Republican party-building activities, including funding recruiting, education, and support activities for poll watchers. The NRCC has made significant contributions and expenditures in support of Republican congressional candidates in Texas in many past election cycles and is doing so again in 2024.

## II.    SB 1

The Texas Legislature enacted SB 1 during a special session in August 2021, and Governor Greg Abbott signed it into law on September 7. *See* S.B. 1, 87th Leg., 2d Spec. Sess. (Tex. 2021), https://bit.ly/3cIECLl ("SB 1"). SB 1 amends the Texas Election Code in various ways, including with respect to rules for voter registration, *see* SB 1 art. 2, election security, *see id.* art. 3, election officers, observers, and watchers, *see id.* art. 4, voting by mail, *see id.* art. 5, assistance of voters, *see id.* art. 6, fraud and other unlawful practices, *see id.* art. 7, and other election-related matters, *see id.* arts. 8–10.

Among other provisions, SB 1:

- Expands upon county registrars' obligation to notify the attorney general when an ineligible person has registered to vote, *see id.* §§ 2.04–2.07, 2.10;

- Expands and standardizes early-voting hours across Texas, *see id.* §§ 3.04, 3.09–3.13;

- Guarantees the rights and obligations of poll watchers by:

  o Protecting poll watchers against arbitrary removal from the polling place, *see id.* § 4.01;

  o Securing poll watchers' right to observe and report upon the conduct of elections so long as they do not interfere with the orderly conduct of an election, *see id.* §§ 4.02, 4.07;

  o Requiring poll watchers to complete a training program established by the secretary of state, *see id.* §§ 4.03–4.04, to present certificates of appointment and completion of training at the polling place, and to take an oath not to "disrupt the voting process or harass voters in the discharge of [her] duties," *id.* § 4.06;

  o Safeguarding poll watchers' right to observe the sealing and transfer of election materials, *see id.* § 4.09; and

o Providing remedies for unlawful prevention or obstruction of performance of a poll watcher's duties, *see id.* §§ 4.09, 4.10;

- Requires a wet signature and identifying information from applicants for mail ballots, *see id.* §§ 5.01–5.03, 5.08, and provides voters an opportunity to cure rejected applications, *see id.* §§ 5.07, 5.10;

- Clarifies the procedures by which a signature verification committee is formed and its members nominated by political party county chairs, *see id.* § 5.11;

- Requires rejection of mail ballots where the personal identifying information does not match the information provided on the mail ballot application, *see id.* § 5.13;

- Revises the oath to be taken by individuals other than election officers who assist voters at the polls, *see id.* § 6.04; and

- Prohibits individuals from knowingly providing or offering to provide compensation or another benefit for, or knowingly collecting or possessing a ballot in connection with, "vote harvesting services," which SB 1 defines as "in-person interaction with one or more voters, in the physical presence of

an official ballot or ballot voted by mail, intended to deliver votes for a specific candidate or measure," *id.* § 7.04.

## III.  The Consolidated Litigation

Even before Governor Abbott signed SB 1 into law, the first groups of plaintiffs filed suit challenging SB 1's various provisions under the U.S. Constitution and federal law.  *See, e.g.*, ROA.63–136 (LUPE); ROA.4761–4822 (OCA-Greater Houston).  A total of five groups of private plaintiffs filed federal-court suits challenging SB 1.  *See also* ROA.5012–5098 (Houston Justice); ROA.5295–5353 (LULAC); ROA.5579–5611 (Mi Familia Vota).  On September 30, the district court consolidated those five suits into a single action under the *La Union Del Pueblo Entero* case number.  *See* ROA.474–478.

The Republican Committees maintain that SB 1 is a commonsense and constitutional statute that, together with other provisions of the Texas Election Code, advances the right to vote, accommodates voters, and protects the integrity of Texas elections.  Because the Republican Committees have interests in SB 1 that could be impaired by disposition of this litigation and that are not adequately represented by any party, they moved to intervene as defendants in this litigation.  In particular,

four of the Republican Committees moved to intervene on October 25, the

same date that Defendants' responses to Plaintiffs' complaints were due,

and the RNC filed a notice of joinder shortly thereafter. *See* ROA.846–

860, 1841–1853, 1880–1882.

The United States then brought its own suit alleging two statutory

claims against SB 1 on November 4. *See* ROA.5640–5657. The district

court consolidated that suit into the private litigation on November 9.

*See* ROA.5685.

The district court held a status conference in all of the consolidated

litigation on November 16. *See* ROA.4630–4683. The district court

announced near the beginning of that conference that it was denying the

Republican Committees' motion to intervene of right and for permissive

intervention. ROA.4637. The district court entered a written order of

denial on November 18. *See* ROA.4138–4145. The Republican

Committees filed a notice of appeal that same day. *See* ROA.4146–4148.

The United States and the groups of private plaintiffs filed

amended complaints on November 30 or December 1. The LUPE, LULAC,

and OCA-Greater Houston plaintiffs each filed their own amended

complaints, and the Houston Justice and Mi Familia Vota plaintiffs filed

a joint amended complaint.  The amended complaints purport to assert claims against SB 1 under the U.S. Constitution and federal law.  *See* ROA.4165–4184 (U.S.); R.4218–4280 (LULAC); R.4281–4357 (OCA-Greater Houston); R.4366–4493 (Houston Justice); ROA.4494–4588 (LUPE).

Plaintiffs' operative complaints variously name the following Defendants:

- The State of Texas, *see* ROA.4167 ¶ 12 (U.S.); ROA.4504 ¶ 21 (LUPE);

- Governor Abbott, *see* ROA.4395 ¶ 71 (Houston Justice);

- Texas Secretary of State John Scott, *see* ROA.4167 ¶ 13 (U.S.); ROA.4227 ¶ 26 (LULAC); ROA.4295 ¶ 35 (OCA-Greater Houston); ROA.4395 ¶ 72 (Houston Justice); ROA.4504 ¶ 22 (LUPE);

- Texas Attorney General Ken Paxton, *see* ROA.4227 ¶ 27 (LULAC); ROA.4297 ¶ 40 (OCA-Greater Houston); ROA.4396 ¶ 77 (Houston Justice); ROA.4508 ¶ 36 (LUPE);

- Bexar County Elections Administrator Jacquelyn Callanen, *see* ROA.4228 ¶ 28 (LULAC); ROA.4398 ¶ 81 (Houston Justice);

- Travis County Clerk Dana DeBeauvoir, *see* ROA.4228 ¶ 29 (LULAC); ROA.4300 ¶ 46 (OCA-Greater Houston);

- Hidalgo County Elections Administrator Yvonne Ramon, *see* ROA.4229 ¶ 31 (LULAC);

- Dallas County Elections Administrator Michael Scarpello, *see* ROA.4229 ¶ 32 (LULAC); ROA.4510 ¶ 41 (LUPE);

- El Paso County Elections Administrator Lisa Wise, ROA.4229 ¶ 33 (LULAC); ROA.4510 ¶ 42 (LUPE); and

- Harris County Elections Administrator Isabel Longoria, *see* ROA.4228 ¶ 30 (LULAC); ROA.4300 ¶ 45 (OCA-Greater Houston); ROA.4398 ¶ 82 (Houston Justice).[1]

The State of Texas, Governor Abbott, Secretary of State Scott, and Attorney General Paxton are collectively referred to as the "State

---

[1] Administrator Longoria appeared as a plaintiff in the original LUPE complaint and as a defendant in the original OCA-Greater Houston, Houston Justice, and LULAC complaints. She voluntarily dismissed her claims in the LUPE action on December 1, *see* ROA.4358–4362, and filed a new action challenging SB 1 on December 10, *see* Compl. (Dkt. 1), *Longoria v. Paxton*, No. 21-cv-01223 (W.D. Tex. filed Dec. 10, 2021). Administrator Longoria remains a named defendant in the amended complaints filed by the LULAC (ROA.4228–4229 ¶ 30), OCA-Greater Houston (ROA.4300 ¶ 45), and Houston Justice-Mi Familia Vota (ROA.4398 ¶ 82) plaintiffs.

Defendants." The remaining Defendants are collectively referred to as the "Local Defendants."

The district court has entered a scheduling order contemplating accelerated proceedings for the consolidated cases, including service of plaintiffs' initial expert disclosures on February 7, 2022, completion of discovery in May 2022, and trial in July 2022. *See* ROA.4149–4152. Accordingly, to preserve their rights, the Republican Committees moved to expedite this appeal, which the Court granted. *See* Order (Dec. 7, 2021).

## SUMMARY OF ARGUMENT

The Court should reverse the decision below and grant the Republican Committees intervention of right in this consolidated litigation.

A. The Republican Committees satisfy all four "minimal" requirements for intervention of right under Federal Rule of Civil Procedure 24(a)(2). *Brumfield v. Dodd*, 749 F.3d 339, 344 n.2, 345 (5th Cir. 2014). *First*, no party disputed below, and the district court agreed, that the Republican Committees' motion was timely.

14

*Second*, the Republican Committees have interests "relating to" SB 1, which is the "property or transaction that is the subject of th[is] action." Fed. R. Civ. P. 24(a)(2).  In particular, the Republican Committees have clear and obvious interests in the rules under which they and their voters, candidates, volunteers, and poll watchers exercise their constitutional rights to vote and to participate in elections in Texas.  The Republican Committees and their poll watchers also have an interest in SB 1 because SB 1 regulates the rights and obligations of poll watchers appointed by county political parties.  *See* SB 1, art. 4.

*Third*, disposition of this litigation "may as a practical matter impair or impede" the Republican Committees' "ability to protect [their] interest[s]." Fed. R. Civ. P. 24(a)(2).  An injunction setting aside even a single provision of SB 1 would bind Defendants and could affect the ability of the Republican Committees and their voters to participate in elections, disrupt the competitive electoral environment in Texas, and make it more difficult for the Republican Committees and their candidates to win elections.  Without intervention, the Republican Committees will have no recourse to protect these interests from a judicial order invalidating SB 1 in whole or in part.

*Finally*, no party "adequately represents" the Republican Committees' unique interests relating to SB 1. *Id.* Indeed, no party even shares, let alone represents, the Republican Committees' interests in educating and mobilizing Republican voters and in advancing Republican candidates' electoral prospects. Moreover, no party to the litigation is a political party regulated by SB 1's poll-watcher provisions and, thus, no party adequately represents that interest either.

B.     The district court's denial of the Republican Committees' motion rested on a series of legal errors related to Rule 24(a)(2)'s interest, impairment, and inadequacy-of-representation requirements. The district court's reasoning contravened this Court's precedents and warrants reversal.

## ARGUMENT

This Court should reverse the district court's erroneous denial and grant the Republican Committees intervention of right in this consolidated litigation. This Court "review[s] a denial of a right to intervene *de novo*." *Brumfield*, 749 F.3d at 342.

16

## I.   THE COURT SHOULD GRANT THE REPUBLICAN COMMITTEES INTERVENTION OF RIGHT

### A.   The Republican Committees Satisfy Rule 24(a)'s Requirements For Intervention Of Right

"Rule 24 is to be liberally construed" in favor of intervention. *Brumfield*, 749 F.3d at 341; *see also Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015).  Indeed, Rule 24(a) directs that federal courts "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

Intervention of right must be granted when the movant satisfies four requirements:

> (1) The application must be timely;
>
> (2) the applicant must have an interest relating to the property or transaction that is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and

17

(4) the applicant's interest must be inadequately
represented by the existing parties to the suit.

*Brumfield*, 749 F.3d at 341.

The Republican Committees satisfy each of these "minimal" requirements and, therefore, are entitled to intervention of right. *Id.* at 344 n.2, 345.

## 1.     The Republican Committees' Motion Was Timely

The Republican Committees filed their motion to intervene on the same date that Defendants' responses to the private plaintiffs' various complaints were due.  ROA.846–860.  No party disputed, and the district court agreed, that the motion was timely.  ROA.4139.  The Republican Committees therefore satisfy the first requirement for intervention of right.

## 2.     The Republican Committees Have Interests Relating To SB 1

The Republican Committees also satisfy the second requirement for intervention of right because they have interests "relating to the property or transaction that is the subject of the action." *Brumfield*, 749 F.3d at 341. The "'property or transaction that is the subject of the action' in this case is [SB 1], so the legal question is whether the [Republican

Committees] have an 'interest' relating to [SB 1]." *Texas*, 805 F.3d at 657 (quoting Fed. R. Civ. P. 24(a)(2)).

The "interest" prong requires merely that a prospective intervenor have "a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* In other words, while there is no "clear definition for the interest" sufficient to satisfy Rule 24(a)(2), this Court requires a "direct, substantial, legally protectable interest in the proceedings." *Id.*

This is not a demanding standard: "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* at 659. Accordingly, this Court has granted intervention of right upon any of a broad swath of interests, including "[a] property interest," an individual's interest in her "own personal right to vote," petition organizers' interest "in cementing their electoral victory," employees' interest in "promotion opportunities," and parents' interest in school vouchers for their children. *Id.* at 658–60 (discussing cases); *see also Edwards*, 78 F.3d at 989, 1004 (employees' interest in promotion opportunities); *City of Houston v. Am. Traffic Sols.,*

*Inc.*, 668 F.3d 291, 294 (5th Cir. 2012) (petition organizers' interest in "cementing their electoral victory"); *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) (individual's "right to vote in elections"); *Black Fire Fighters Ass'n of Dall. v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994) (employees' interest in "promotion opportunities"). Moreover, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group" because "[t]he zone of interests protected by a constitutional provision or statute of general application is arguably broader than are the protectable interests recognized in other contexts." *Brumfield*, 749 F.3d at 344.

The Republican Committees have at least two sets of legally protectable interests "relating to" SB 1. Fed. R. Civ. P. 24(a)(2); *Texas*, 805 F.3d at 657. *First*, the Republican Committees have clear interests relating to participation in, and the outcome of, Texas elections governed by SB 1. Those interests include an interest—on behalf of the Republican Committees themselves as well as their voters, candidates, and volunteers—in the rules under which the Committees and those individuals exercise their constitutional rights to vote and to participate

in elections in Texas. *See, e.g.*, *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 222–23 (1989) (recognizing that the First Amendment protects campaigning and certain activities by political parties and their adherents); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'"); *see also supra* pp. 3–7. That participation includes the Republican Committees' expenditure of resources on "educating, mobilizing, assisting and turning out voters" and providing "direct and indirect financial contributions and support" for "voter registration, voter education, and voter turnout programs." *See supra* pp. 3, 6–7.

The Republican Committees also have an obvious interest in advancing the overall electoral prospects of Republican candidates in Texas, and in winning elections in the state. That interest entails an interest in maintaining the "competitive environment" surrounding elections in Texas. *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005). Indeed, because their supported candidates seek election or reelection "in contests governed by the challenged rules" enacted in SB 1, the Republican Committees have an interest in "demand[ing] adherence" to

those requirements and preventing changes to the "competitive environment" those rules foster. *Id.* at 85, 88.

Notably, these interests are the same interests that at least some organizational private plaintiffs in these cases have invoked to support their standing allegations and challenges to SB 1. *See, e.g.*, ROA.4224 ¶ 20 ("LULAC regularly engages in voter registration, voter education, and other activities and programs designed to increase voter turnout among its members and their communities, which is critical to LULAC's mission."); ROA.4225 ¶ 21 ("In 2022, Voto Latino anticipates making expenditures in the millions of dollars to educate, register, mobilize, and turn out Latinx voters across the United States, including in Texas."); ROA.4226 ¶ 23 (alleging that SB 1 "threaten[s] the electoral prospects of the Alliance's endorsed candidates"); ROA.4288–4295 ¶¶ 19–34 (reciting voter education and mobilization efforts by the League of Women Voters, REVUP, Texas Organizing Project, and Workers Defense Action Fund); ROA.4378–4380 ¶¶ 34–37 (reciting Houston Justice's voter registration efforts); ROA.4380–4381 ¶¶ 39–41 ("Through its president, contract employees, and clients, HAUL engages in voter registration, voter education, and other activities and programs aimed at increasing voter

turnout among vulnerable members of the Houston community."); ROA.4385–4386 ¶ 51 (reciting the Arc of Texas's voter education and registration activities); ROA.4454 ¶ 253 ("The First Amendment protects the rights of Texans to vote for candidates of their choosing"); ROA.4498–4502 ¶¶ 9, 13, 14, 16 (reciting voter education and mobilization efforts by LUPE, Southwest Voter Registration Education Project, Texas Impact, Texas HOPE).

Federal courts—including, in a prior case, the Western District of Texas and the district judge below—have granted political party committees intervention of right in cases challenging election laws and have recognized that such committees' interests in participating in elections, maintaining the competitive electoral environment, and winning elections satisfy Rule 24(a)(2). *See, e.g.*, *Issa v. Newsom*, No. 20-cv-1044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention of right to Democratic Congressional Campaign Committee and the Democratic Party of California based upon their interests in "asserting the rights of their members to vote," "advancing their overall electoral prospects," and "diverting their limited resources to educate their members on the election procedures"); *Paher v. Cegavske*, No. 20-

cv-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention of right to the Nevada State Democratic Party, DNC Services Corporation/Democratic National Committee, and DCCC based upon their "efforts to promote the franchise and ensure the election of Democratic Party candidates"); Order (Dkt. 31), *Perez v. Perry*, No. 11-cv-00360 (W.D. Tex. July 12, 2011) (three-judge court) (Garcia, J., Smith, J., & Rodriguez, J.) (granting Texas Democratic Party intervention of right in redistricting suit).

And the Republican Committees' interests in participating in elections under the Legislature's duly enacted rules, preserving the competitive electoral environment, and winning elections are "remarkably similar to the interest[s]" this Court has found sufficient to satisfy Rule 24(a)(2). *Brumfield*, 749 F.3d at 343; *see also Texas*, 805 F.3d at 658–60; *Edwards*, 78 F.3d at 989, 1004 (employees' interest in rules for promotion opportunities); *City of Houston*, 668 F.3d at 294 (petition organizers' interest in "cementing their electoral victory"); *League of United Latin Am. Citizens*, 659 F.3d at 434 (individual's "right to vote in elections"); *Black Fire Fighters Ass'n of Dall.*, 19 F.3d at 994 (employees' interest in rules "promotion opportunities"). In short, the Republican

Committees' interests "relat[e] to" SB 1 and alone satisfy Rule 24(a)(2)'s interest requirement.  Fed. R. Civ. P. 24(a)(2).

*Second*, if more were for some reason needed, the Republican Committees have another interest sufficient to satisfy Rule 24(a)(2) because SB 1 directly "regulat[es] [the] conduct" of the Republican Committees and their volunteer poll watchers.  *Texas*, 805 F.3d at 658. In accordance with Texas law, the Harris County Republican Party and the Dallas County Republican Party recruit, train, and appoint poll watchers "to observe the conduct of . . . election[s]" in Texas.  Tex. Elec. Code § 33.001; *see also id.* § 33.003; Harris County GOP, *Become A Volunteer*, *supra*; Dallas County Republican Party, *supra*.  RNC, NRSC, and NRCC also fund recruiting, education, and support activities for poll watchers.  *See supra* pp. 5–7.  SB 1 enacts several significant rules regulating party-appointed poll watchers in such areas as poll watchers' rights of access and poll watchers' new obligations to complete a training program established by the secretary of state, to present certificates at the polling place, and to take an oath.  *See, e.g.*, SB 1 §§ 4.01–4.04, 4.06– 4.07, 4.09–4.10.  Without question, the Republican Committees' interest

in SB 1's "regulation" of their and their poll watchers' "conduct" satisfies Rule 24(a)(2)'s interest requirement. *Texas*, 805 F.3d at 658.

### 3. The Republican Committees' Ability To Protect Their Interests May Be Impaired By This Action

The "impairment" requirement for intervention of right is "practical": it "does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule." *Brumfield*, 749 F.3d at 344. Movants need not show that "their interests *will* be impaired," but instead only that "the disposition of the action 'may' impair or impede their ability to protect their interests." *Id.* (emphasis original).

In other words, "'a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. The burden is *minimal*.'" *Id.* at 344 n.2 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)) (emphasis in *Brumfield*). This practical recognition of a minimal burden comports with "[t]he very purpose of intervention": "to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 345; *see also id.* at 344–45 ("It would indeed be a questionable rule that would require prospective intervenors to wait on

the sidelines until after a court has already decided enough issues contrary to their interests.").

Plaintiffs seek injunctive relief setting aside SB 1's major substantive provisions and enjoining Defendants from enforcing them. Indeed, at least some Plaintiffs seek a judicial order setting aside *each and every provision of SB 1 cited above.  See supra* pp. 8–10; ROA.4182 (U.S.); ROA.4267–4278 (LULAC); ROA.4323–4354 (OCA-Greater Houston); ROA.4454–4489 (Houston Justice); ROA.4558–4585 (LUPE). Those provisions touch on a broad sweep of election administration matters ranging from registration by ineligible individuals, *see* SB 1 §§ 2.04–2.07, 2.10, early-voting hours, *see id.* §§ 3.04, 3.09–3.13, poll watchers' rights and obligations, *see id.* §§ 4.01–4.04, 4.06–4.07, 4.09–4.10, signature verification, *see id. see id.* §§ 5.01–5.03, 5.07–5.08, 5.10–5.11, mail ballot applications, *see id.* § 5.13, and voter assistants, *see id.* § 6.04, to "vote harvesting services," *see id.* § 7.04.

Without intervention, the Republican Committees will have no recourse or ability "to protect their interests" in upholding SB 1 against the injunctions Plaintiffs seek and any judgment against Defendants. *Brumfield*, 749 F.3d at 344.  And an injunction invalidating *any* of these

27

provisions would undermine the Republican Committees' interests in SB 1. *First*, such an injunction may impair the Republican Committees' ability to protect their interests in participating in elections on behalf of themselves and their voters, candidates, volunteers, and poll watchers. *See, e.g.*, *Paher*, 2020 WL 2042365, at \*2 (holding that an injunction invalidating a state election rule could disrupt a political party's efforts to educate and turn out voters and to facilitate "the election of . . . candidates" it supports); *see also Issa*, 2020 WL 3074351, at \*3. After all, by setting aside one or more provisions of SB 1, any injunction granted in these cases would change the rules under which Texas elections are conducted. Accordingly, disposition of this action may require the Republican Committees to change their voter-education and mobilization programs and to reallocate, or even increase, their expenditure of resources towards educating, mobilizing, assisting, training, and turning out voters, volunteers, and poll workers.

An injunction in these cases also may affect the Republican Committees' ability to protect their interest in maintaining the competitive environment in which their supported candidates seek election in Texas—and could even go so far as to "fundamentally alter

th[at] environment." *Shays*, 414 F.3d at 86. For example, the private plaintiffs seek an injunction invalidating SB 1's prohibition on "vote harvesting." *See, e.g.*, ROA.4272–4275 (LULAC); ROA.4352 ¶ 220, ROA.4354 ¶ 234 (OCA-Greater Houston); R.4456 ¶ 260, ROA.4457 ¶ 262, ROA.4460 ¶ 276, ROA.4461 ¶ 277, ROA.4464 ¶ 295, ROA.4465 ¶ 296, ROA.4469 ¶ 309, ROA.4470 ¶ 311 (Houston Justice); ROA.4458–4559 ¶ 217, ROA.4562 ¶ 230, ROA.4564 ¶ 244, ROA.4566 ¶ 257, ROA.4568 ¶ 268, ROA.4574 ¶ 288, ROA.4581 ¶ 313, ROA.4583 ¶ 325 (LUPE). Some private plaintiffs also seek an injunction extending early-voting hours beyond the times set by SB 1. *See, e.g.*, ROA.4268 ¶ 246, ROA.4277 (LULAC); R.4457 ¶ 260, R.4457 ¶ 261, ROA.4458 ¶ 262, ROA.4460 ¶ 276, ROA.4461 ¶ 277, ROA.4462 ¶ 278, ROA.4464 ¶ 295, ROA.4465 ¶ 296, ROA.4466 ¶ 297, ROA.4469 ¶ 309, ROA.4470 ¶ 310, ROA.4470 ¶ 311 (Houston Justice); ROA.4558 ¶ 217, ROA.4562 ¶ 230, ROA.4564 ¶ 244, ROA.4566 ¶ 257, ROA.4570 ¶ 264, ROA.4572 ¶ 282 (LUPE).

In all events, any injunction issued in these cases could subject the Republican Committees to a "broader range of competitive tactics" (such as vote harvesting) from their opponents than Texas law "would otherwise allow." *Shays*, 414 F.3d at 86. Without intervention, the

Republican Committees cannot protect their interest in maintaining the current competitive electoral environment in Texas against a judicial order invalidating SB 1 in whole or in part. *See, e.g.*, *Paher*, 2020 WL 2042365, at *2; *Issa*, 2020 WL 3074351, at *3; *compare also Edwards*, 78 F.3d at 989 (intervention of right warranted where decree changed the rules for employees to compete for "promotion opportunities") *Black Fire Black Fire Fighters Ass'n of Dall.*, 19 F.3d at 994, 1004 (same); *Brumfield*, 749 F.3d at 343 (intervention of right warranted where a potential decree would change the rules of a voucher program and, thus, threatened "prospective interference with" educational opportunities).

In fact, an injunction against one or more provisions of SB 1 could threaten prospective interference with Republican electoral opportunities or even "chang[e] the results" of some future election in Texas to the detriment of the Republican Committees, their voters, and their supported candidates. *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 764 (E.D. Mich. 2020). After all, at least one Plaintiff alleges that SB 1 "threaten[s] the electoral prospects of [its] endorsed candidates," ROA.4226 ¶ 23 (LULAC), so an injunction invalidating SB 1 *necessarily*

threatens the electoral prospects of other candidates, *see, e.g.*, *Paher*, 2020 WL 2042365, at \*2; *Issa*, 2020 WL 3074351, at \*3.

Those candidates may include candidates supported by the Republican Committees.  For example, under the district court's current scheduling order, SB 1 will remain in place for the 2022 primary election, but an order enjoining SB 1 could issue shortly before the 2022 general election or some other election.  An eleventh-hour order changing rules on the eve of an election—particularly after those rules have been in place for at least one election—threatens to confuse voters and undermine confidence in the electoral process.  *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).  This resulting confusion or loss of confidence may make it less likely that the Republican Committees' voters will vote, that those voters will successfully vote in compliance with whatever judicially imposed rules are then in place, and ultimately that the Republican Committees' candidates will win.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

*Second*, disposition of this litigation could affect the Republican Committees' ability to protect their interests as parties "regulat[ed]" by SB 1.  *Texas*, 805 F.3d at 658. Various Plaintiffs seek orders invalidating

provisions of SB 1 related to poll watchers. *See, e.g.*, ROA.4268 ¶ 246, ROA.4277 (LULAC); R.4457 ¶ 260, ROA.4460 ¶ 276, ROA.4461 ¶ 277, ROA.4462 ¶ 278, ROA.4464 ¶ 295, ROA.4465 ¶ 296, ROA.4466 ¶ 297, ROA.4470 ¶ 309, ROA.4470 ¶ 310, ROA.4470 ¶ 311, ROA.4476 ¶ 329 (Houston Justice); ROA.4458 ¶ 217, ROA.4562 ¶ 230, ROA.4564 ¶ 244, ROA.4566 ¶ 257 (LUPE).  Any such order would change the rules under which the Republican Committees and their poll watchers observe and report on elections in Texas, and the Republican Committees cannot defend those rules against Plaintiffs' challenges or appeal a judicial invalidation of them without intervention.  The Republican Committees and their poll watchers could therefore be required to alter their poll-watching practices—and to update the poll-watcher training materials toward which they devote significant resources—to comport with the new judicially implemented rules that they had no opportunity to contest. The Republican Committees' ability to protect their interest as regulated parties therefore "may" be "impair[ed]" by "the disposition of th[is] action." *Blumfield*, 749 F.3d at 344.

### 4. No Party To The Case Adequately Represents The Republican Committees' Interests In SB 1

The final requirement for intervention of right does not demand a showing that "the representation by existing parties" of the movant's interest "will be, for certain, inadequate." *Texas*, 805 F.3d at 661. Instead, "the Rule is satisfied if the applicant shows that [the] representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Texas*, 805 F.3d at 661. Once again, this burden is "minimal." *Texas*, 805 F.3d at 661; *Brumfield*, 749 F.3d at 345.

No party to this litigation shares—much less represents—the Republican Committees' unique interest in advancing Republican candidates' electoral prospects or in Republican candidates winning elections. No party shares or represents the Republican Committees' interest in participating in elections or in maintaining the competitive electoral environment on behalf of the Republican Committees and their voters, candidates, volunteers, or poll watchers. And no party to the litigation is regulated by SB 1's poll-watcher provisions like the Republican Committees and their poll watchers. Thus, the plain text of Rule 24(a) is satisfied: *no* "existing part[y] . . . represent[s]"—"adequately"

33

or otherwise—*any* of the Republican Committees' unique "interest[s] relating to" SB 1.  Fed. R. Civ. P. 24(a)(2).

Nor does either of the two presumptions of adequate representation recognized by this Court apply here.  *First*, there "is no suggestion" that any party is "the [Republican Committees'] legal representative." *Brumfield*, 749 F.3d at 345.

*Second*, the Republican Committees cannot be said to have "the same ultimate objective as a party to the lawsuit," such that they "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption."  *Id.*; *but see Texas*, 805 F.3d at 662 n.5 (noting commentary that "it [is] unlikely that there are three and only three circumstances that would make representation inadequate").  *Brumfield* again underscores that this second presumption is not satisfied in this case.

The dispute in *Brumfield* arose when the United States sought a judicial order prohibiting the State of Louisiana from awarding school vouchers to students attending schools in districts under federal desegregation orders unless the state received authorization from the federal court overseeing the decree.  *See* 749 F.3d at 340.  Parents of

34

affected students moved to intervene of right to oppose the injunction. *See id.* This Court held that the presumption of adequate representation was inapplicable—and that the parents were entitled to intervene of right—even though "both the state and the parents vigorously oppose dismantling the voucher program" and the injunction the United States sought. *Id.* at 345.

That was because, as this Court pointed out, the interests of the parents and the State "may not align precisely." *Id.* After all, "[t]he state ha[d] many interests in th[e] case" that the parents did not share, such as maintaining "its relationship with the federal government and with the courts that have continuing desegregation jurisdiction." *Id.* at 346. Accordingly, this Court found, "[w]e cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires." *Id.* (emphasis in original).

In fact, federal courts across the country have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors" because their interests differ from, or are more extensive than, the aspiring intervenors' interests. *Fund for Animals,*

*Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). Here, for example, Defendants' generalized interest in enforcing the law is distinct from the Republican Committees' private interests. *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001). For one thing, Defendants have no interest in electing particular candidates. *Cf. Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994). For another, they must consider a "broad spectrum of views, many of which may conflict" with the Republican Committees' specific interests in advancing electoral participation by Republicans, maintaining the competitive electoral environment, and winning elections. *Clinton*, 255 F.3d at 1256. These can include the "expense of defending" the current laws, *Clark v. Putnam Cnty.*, 168 F.3d 458, 461–62 (11th Cir. 1999); the "social and political divisiveness of the election issue," *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) (per curiam); and the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991).

As one court recently explained in permitting Democratic Party committees to intervene of right in a case challenging a state election law:

> While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures. . . . As a result, the parties' interests are neither "identical" nor "the same" [and] the interests of the Proposed Intervenors may not be adequately represented.

*Issa*, 2020 WL 3074351, at *3 (citation omitted).

For all of these reasons, Defendants may not adequately represent the Republican Committees' interests. And there is more. Take the State Defendants. While they generally share the Republican Committees' "objective" of upholding SB 1, the State Defendants' and the Republican Committees' interests nonetheless "may not align precisely" because the State Defendants have "more extensive interests" that the Republican Committees do not share. *Brumfield*, 749 F.3d at 345–46. For example, the State Defendants have an interest in maintaining "[their] relationship with the federal government"—which is one of the Plaintiffs here—with local election officials, including the Local Defendants, and "with the [federal] courts" before which they frequently appear. *Id.*; *see*

*also Texas*, 805 F.3d at 663 (noting the federal government's interest in "maintaining its working relationship with the States"). The State Defendants also have an interest in preserving the contours of their legal authority, *compare, e.g.*, *Texas*, 805 F.3d at 663 (noting the federal government's interest in "securing an expansive interpretation of executive authority"), and in maximizing any available immunities from suit, *see, e.g.*, *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–181 (5th Cir. 2020) (examining *Ex Parte Young* doctrine); *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (same). As in *Brumfield*, regardless of whether these "more extensive interests will *in fact* result in inadequate representation, . . . surely they might, which is all that the rule requires" to demonstrate that the State Defendants do not adequately represent the Republican Committees' interests. *Brumfield*, 749 F.3d at 346.

The State Defendants have also "stak[ed] out a position" significantly different from any position the Republican Committees may assert in the case. *Id.* In particular, the State Defendants filed motions to dismiss each of the complaints on the grounds that the State Defendants either do not have enforcement authority over the challenged

provisions of SB 1 or that Plaintiffs have not adequately alleged such authority. *See* ROA.681–687; ROA.720–726; ROA.795–802; ROA.1192–1199; ROA.1278–1283. If the State Defendants prevail on that defense, there would be no party left in the case to pursue the objective of upholding SB 1 statewide or in the localities outside the Local Defendants' jurisdiction. And it is precisely such statewide interests of the Republican Committees and their voters, candidates, volunteers, and poll watchers that the Committees seek to represent by intervening.

Finally, it cannot seriously be claimed that the Local Defendants—each of whom is named in some, but none of whom is named in all, of the amended complaints—are adequate representatives of the Republican Committees' statewide interests. In fact, Administrator Longoria is *challenging* SB 1, *see supra* p. 13 n.1, so she is not representing the Republican Committees' various interests in *upholding* SB 1 at all, let alone "adequately." Moreover, only one county official, Medina County Elections Administrator Lupe Torres, moved to dismiss any of the original complaints, *see* ROA.1301–1335, but Administrator Torres is not named in any of the amended complaints, *see supra* pp. 12–13. Defendant DeBeauvoir has stated that she "does not intend to defend the

constitutionality of the statute in this lawsuit," ROA.1635, and all of the Local Defendants have disclaimed any responsibility for SB 1 and declined to move to dismiss any of the amended complaints, *see, e.g.*, ROA.1633–1635, indicating they may not be committed to a vigorous defense. Yet, even if some of the Local Defendants intend to defend against the Plaintiffs' claims, they still have "more extensive interests" to consider as government officials, *Brumfield*, 749 F.3d at 346, and their more limited resources and restricted jurisdictions make it doubtful that they will be able to vigorously defend a statewide law. They therefore also "may" not adequately represent the Republican Committees' interests in this suit, and the Republican Committees have carried their minimal burden on this requirement for intervention of right as well. *Id.* at 345; *Texas*, 805 F.3d at 661.

## B.   The District Court Reversibly Erred In Denying The Republican Committees Intervention Of Right

The district court's denial of the Republican Committees' motion to intervene of right rested on six main assertions, each of which contravenes this Court's controlling precedents and is tainted by legal error.

*First*, the district court suggested at the hearing that a movant must "have standing" in order to be granted intervention under Rule 24. ROA.4636. Any such suggestion, of course, is legally erroneous. *See Texas*, 805 F.3d at 657.

*Second*, the district court asserted in its order that the Republican Committees' interest in "ensur[ing] that Texas carries out free and fair elections" is a mere "ideological interest" that does not "support intervention of right." ROA.4140. To be sure, the Republican Committees seek to uphold free and fair elections on behalf of all Texas voters—and maintain that SB 1 is a commonsense and constitutional statute that properly advances that purpose. But that was *not* the interest on which the Republican Committees sought to intervene in this case. Rather, as the Republican Committees explained to the district court, intervention of right was warranted based on their *unique and specific* interests—on behalf of themselves, their voters, their candidates, their volunteers, and their poll watchers—in participating in elections, maintaining the competitive electoral environment, and in promoting the election of Republican candidates in Texas. ROA.846–857; ROA.1841–1849; *see also supra* Part I.A.2.

41

*Third*, the district court acknowledged that the Republican Committees' "interests in electing their preferred candidates might very well be 'direct, substantial, legally protectable interests'" sufficient to support intervention of right. ROA.4141. The district court, however, suggested that the Republican Committees had not explained "how any of these interests are connected to *these proceedings*" or, in other words, "relate to the property or transaction which is the subject of the action." ROA.4141 (emphasis original). This suggestion is puzzling because the Republican Committees explained that those interests relate to SB 1 and that disposition of this action could impair their ability to protect those interests. *See* ROA.846–855, ROA.1843–1846; *see also supra* Part I.A.2–3.

*Fourth*, the district court prognosticated a parade of intervenors, asserting that "the Committees' position would confer a right of intervention on any political entity in cases involving elections or election laws." ROA.4141. But this unsubstantiated assertion rested on the district court's faulty premise that the Republican Committees had asserted only a generalized "interest in a particular area of law" and had not articulated "legally protectable" interests in SB 1. ROA.4141.

Moreover, the district court's sweeping assertion is false. Any putative intervenor of right must independently satisfy Rule 24(a)'s requirements of timeliness, interest, impairment, and inadequacy of representation. *See* Fed. R. Civ. P. 24(a)(2). The hypothetical "political entity" imagined by the district court may well be unable to satisfy those requirements. Indeed, a "political entity" is not necessarily similarly situated to committees of a major political party and does not necessarily share a political party's interests on behalf of itself and its voters, candidates, volunteers, and poll watchers. In fact, a "political entity" may not have, let alone support, any voters or candidates (as opposed to issue positions); may have no interest in maintaining a competitive environment for particular candidates; may have no interest in advancing any candidate's electoral prospects; and, unlike political parties in Texas, are not authorized to appoint poll watchers. *See* Tex. Elec. Code §§ 33.001, 33.003. That may explain why only one entity other than the Republican Committees even attempted to intervene in these cases despite the widespread public attention that SB 1, this litigation, and election integrity concerns generally have attracted across the country in recent months. *See* ROA.523–535; ROA.4132–4137.

43

*Fifth*, the district court suggested on the record that the Republican Committees could not satisfy Rule 24(a)(2) because "the State is more than ably represented and their positions are ably represented by the Attorney General's Office." R.4637. But whether the Attorney General's Office is ably representing *the State* has no bearing on whether the *Republican Committees* are adequately represented or can satisfy the other requirements of Rule 24(a)(2). The district court's suggestion to the contrary was erroneous.

*Finally*, the district court concluded that "there is no reason to believe that the State Defendants' representation of the Committees' purported interests would be inadequate" because, in its view, the Republican Committees had not shown "that their interests or objectives are adverse to the State Defendants' 'more extensive' interests." ROA.4142. Yet, once again, this conclusion rested on the district court's flawed premise that the Republican Committees had not shown that their "interest in electing particular candidates" is "at stake in this litigation." ROA.4142–4143. Moreover, the district court applied an erroneous legal standard to the inadequacy-of-representation question: the Republican Committees bore no burden to show that Defendants'

representation "would be inadequate" or that Defendants "are adverse" to the Republican Committees.  ROA.4142.  Instead, they were required to make only the minimal showing that Defendants' representation "may" be inadequate—a showing they have easily made.  *Brumfield*, 749 F.3d at 345; *Texas*, 805 F.3d at 661; *see also supra* Part I.A.4.

## CONCLUSION

The Court should reverse the decision below and grant the Republican Committees intervention.

Dated: December 20, 2021

Respectfully submitted,

*/s/ John M. Gore*

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Stephen J. Kenny
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C.  20001-2113
(202) 879-3939
jmgore@jonesday.com

*Counsel for Movants-Appellants*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the items exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 8,247 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Century Schoolbook font.

Dated: December 20, 2021                Respectfully submitted,

                                        */s/ John M. Gore*

                                        *Counsel of Record for Movants-*
                                        *Appellants*

46

## CERTIFICATE OF ELECTRONIC SUBMISSION

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: December 20, 2021          Respectfully submitted,

*/s/ John M. Gore*

*Counsel of Record for Movants-Appellants*

# CERTIFICATE OF SERVICE

I certify that on December 20, 2021, I served the foregoing Appellants' Opening Brief on counsel for all parties via the Court's CM/ECF system.

Dated: December 20, 2021       Respectfully submitted,

*/s/ John M. Gore*

*Counsel of Record for Movants-Appellants*