No. 21-51145

In the

# United States Court of Appeals for the Fifth Circuit

**LA UNION DEL PUEBLO ENTERO; FRIENDSHIP-WEST BAPTIST CHURCH; THE ANTI-DEFAMATION LEAGUE AUSTIN, SOUTHWEST, AND TEXOMA; SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT; TEXAS IMPACT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; JAMES LEWIN; FIEL HOUSTON, INCORPORATED; MI FAMILIA VOTA; MARLA LOPEZ; PAUL RUTLEDGE,**
*Plaintiffs-Appellees*,

v.

**GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL.,**
*Defendants*,

and

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,**
*Movants-Appellants.*
(captions continued on inside cover)

On Appeal from the United States District Court
for the Western District of Texas
(No. 5:21-cv-844)

## BRIEF OF APPELLEES

Uzoma N. Nkwonta
  *Counsel of Record*
Graham W. White
Noah B. Baron
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, DC 20002
unkwonta@elias.law

January 19, 2022

*Counsel for Plaintiffs-Appellees LULAC Texas, Voto Latino, Texas Alliance for Retired Americans, and Texas AFT (additional counsel on back cover)*

**OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS; REVUP-TEXAS; TEXAS ORGANIZING PROJECT; WORKERS DEFENSE ACTION FUND,**
*Plaintiffs-Appellees,*
v.
**JOSE A. ESPARZA, IN HIS OFFICIAL CAPACITY AS DEPUTY SECRETARY OF THE STATE OF TEXAS; ET AL.,**
*Defendants,*
and
**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,**
*Movants-Appellants.*

---

**HOUSTON JUSTICE; DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON AREA URBAN LEAGUE; THE ARC OF TEXAS; JEFFREY LAMAR CLEMMONS,**
*Plaintiffs-Appellees,*
v.
**GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL.,**
*Defendants,*
and
**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,**
*Movants-Appellants.*

---

(captions continued on next page)

**LULAC TEXAS; VOTO LATINO; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT,**
*Plaintiffs-Appellees,*
v.
**JOSE A. ESPARZA, IN HIS OFFICIAL CAPACITY AS THE TEXAS DEPUTY SECRETARY OF STATE; ET AL.,**
*Defendants,*
and
**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,**
*Movants-Appellants.*

---

**MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL RUTLEDGE,**
*Plaintiffs-Appellees,*
v.
**GREGORY ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL.,**
*Defendants,*
and
**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,**
*Movants-Appellants.*

---

**UNITED STATES OF AMERICA,**
*Plaintiffs-Appellees,*
v.
**STATE OF TEXAS; ET AL.,**
*Defendants,*
and
**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,**
*Movants-Appellants*

---

# CERTIFICATE OF INTERESTED PERSONS

*La Union Del Pueblo Entero, et al. v. Gregory W. Abbott, et al.*, No. 21-51145

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Plaintiffs-Appellees** | **Counsel** |
|---|---|
| ▪ La Union Del Pueblo Entero<br>▪ Southwest Voter Registration Education Project<br>▪ Mexican American Bar Association of Texas<br>▪ Texas Hispanics Organized for Political Action<br>▪ Jolt Action<br>▪ William C. Velasquez Institute | ▪ Nina Perales<br>▪ Julia R. Longoria<br>▪ Michael C. Keats<br>▪ Rebecca L. Martin<br>▪ Jason S. Kanterman<br>▪ Jessica M. Choi<br>▪ Christopher Bell<br>▪ Kevin Zen<br>▪ Mexican American Legal Defense and Educational Fund<br>▪ Fried, Frank, Harris, Shriver & Jacobson LLP |

| **Plaintiffs-Appellees** | **Counsel** |
|---|---|
| ▪ Friendship-West Baptist Church<br>▪ Anti-Defamation League Austin<br>▪ Southwest and Texoma Regions<br>▪ Texas Impact<br>▪ James Lewin | ▪ Sean Morales-Doyle<br>▪ Eliza Sweren-Becker<br>▪ Patrick A. Berry<br>▪ Andrew B. Garber<br>▪ Jasleen K. Singh<br>▪ Elizabeth Y. Ryan<br>▪ Paul R. Genender<br>▪ Matthew Berde<br>▪ Megan Cloud<br>▪ Alexander P. Cohen<br>▪ Brennan Center for Justice at NYU |

School of Law
- Weil, Gotshal, & Manges LLP

**Plaintiffs-Appellees**

- Mi Familia Vota
- Marla Lopez
- Marlon Lopez
- Paul Rutledge

**Counsel**

- Ben Clements
- Laura E. Rosenbaum
- Wendy J. Olson
- Courtney M. Hostetler
- Elijah M. Watkins
- John Bonifaz
- Marc T. Rasich
- Ronald A. Fein
- Sean Michael Lyons
- Free Speech for People
- Stoel Rives LLP
- Lyons & Lyons, PC

**Plaintiffs-Appellees**

- Houston Justice
- Houston Area Urban League
- Delta Sigma Theta Sorority Inc.
- The Arc of Texas
- Jeffrey Lamar Clemmons

**Counsel**

- Georgina Yeomans
- J. Keely Dulaney
- Jennifer A. Holmes
- Kathryn Sadasivan
- Kenneth E. Broughton, Jr.
- Lora Spencer
- Sarah M. Cummings
- Shira Wakschlag
- Amir Badat
- NAACP Legal Defense and Educational Fund, Inc.
- Reed Smith LLP
- The Arc of the United States

**Plaintiffs-Appellees**

- LULAC Texas
- Voto Latino

**Counsel**

- Domingo A. Garcia
- Graham W. White

- Texas Alliance for Retired Americans
- Texas AFT

- John R. Hardin
- Jonathan P. Hawley
- Joseph N. Posimato
- Kathryn E. Yukevich
- Marc E. Elias
- Meaghan E. Mixon
- Uzoma N. Nkwonta
- Elias Law Group LLP
- Perkins Coie, LLP

**Plaintiffs-Appellees**

- OCA-Greater Houston
- League of Women Voters of Texas
- REVUP-Texas
- Texas Organizing Project
- Workers Defense Action Fund

**Counsel**

- Adriel Cepeda-Derieux
- Andrew I. Segura
- Hani Mirza
- Jerry Vattamala
- Jessica Ring Amunson
- Lia Sifuentes Davis
- Lucia Romano Ostrom
- Mimi M.D. Marziani
- Patrick Stegemoeller
- Ryan V. Cox
- Samantha Osaki
- Savannah Kumar
- Sophia Lin Lakin
- Susan Lorenzo-Giguere
- Thomsa Paul Buser-Clancy
- Urja Mittal
- Ari Savitzky
- Ashley Alcantara Harris
- American Civil Liberties Union Foundation
- Texas Civil Rights Project
- Asian American Legal Defense and Education Fund
- Jenner & Block LLP
- Disability Rights Texas
- ACLU Foundation of Texas

**Plaintiffs-Appellee**

- United States of America

**Counsel**

- Daniel Joshua Freeman
- Jennifer Jaeseon Yun
- Michael Elliot Stewart
- Richard Alan Dellheim
- Thomas Christian Herren, Jr.
- Dana Paikowsky
- Erin Helene Flynn
- Katherine Elmlinger Lamm
- U.S. Department of Justice

**Defendants**

- Gregory W. Abbott
- John B. Scott
- Jose A. Esparza
- Warren K. Paxton

**Counsel**

- Patrick K. Sweeten
- Jeffrey Michael White
- Eric A. Hudson
- Office of the Texas Attorney General

**Defendant**

- Lupe C. Torres

**Counsel**

- Chad Ennis
- Robert E. Henneke
- Texas Public Policy Foundation

**Defendant**

- Lisa Wise

**Counsel**

- Angelica Lien Leo
- Beatriz Mejia
- Christine Sun
- Germaine Habell
- Kathleen Hartnett
- Kelsey Spector
- Orion Armon
- Ranjana Natarajan
- Sharon Song
- Zack Goldberg

- Cooley LLP
- States United Democracy Center

**Defendant**

- Isabel Longoria

**Counsel**

- Jonathan Fombonne
- Sameer Birring
- Office of the Harris County Attorney

**Defendant**

- Jacque Callanen

**Counsel**

- Robert D. Green
- Bexar County District Attorney

**Defendant**

- Yvonne Ramon

**Counsel**

- Josephine L. Ramirez
- Leigh Ann Tognetti
- Hidalgo County District Attorney's Office

**Defendant**

- Michael Scarpello

**Counsel**

- Barbara S. Nicholas
- Ben L. Stool
- Dallas County District Attorney's Office

**Defendant**

- Dana DeBeauvoir

**Counsel**

- Anthony J. Nelson
- Leslie W. Dippel
- Patrick T. Pope
- Sherine Elizabeth Thomas
- Travis County Attorney's Office

**Movants-Appellants**

- Harris County Republican Party

**Counsel**

- John M. Gore

- Dallas County Republican Party
- Republican National Committee
- National Republican Senatorial Committee
- National Republican Congressional Committee

- E. Stewart Crosland
- Stephen J. Kenny
- Jones Day

**Amicus**

- Foundation for Government Accountability

**Counsel**

- Donna Garcia Davidson
- Chase Martin
- Stewart Wilson

**Proposed Intervenor**

- Public Interest Legal Foundation

**Counsel**

- Andy Taylor
- Maureen Riordan
- Kaylan L. Phillips

**Defendant**

- Kim Ogg

**Counsel**

- Counsel has not yet appeared.

**Defendant**

- Joe Gonzales

**Counsel**

- Counsel has not yet appeared.

**Defendant**

- Jose Garza

**Counsel**

- Counsel has not yet appeared.

Dated: January 19, 2022                  _/s/ Uzoma N. Nkwonta_
                                         Uzoma N. Nkwonta
                                         **_COUNSEL OF RECORD FOR_**
                                         **_PLAINTIFFS-APPELLEES_** _LULAC_
                                         _Texas, Voto Latino, Texas Alliance for_
                                         _Retired Americans, and Texas AFT_

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and (f) and Fifth Circuit Rule 28.2.3, Appellees take no position on the propriety of oral argument. If the Court holds oral argument, Appellees respectfully request to participate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ......................................... viii

TABLE OF CONTENTS.........................................................................................ix

TABLE OF AUTHORITIES ..................................................................................x

INTRODUCTION ...................................................................................................1

STATEMENT OF JURISDICTION.......................................................................2

ISSUES PRESENTED.............................................................................................3

STATEMENT OF THE CASE................................................................................3

    I.      Factual Background........................................................................3

    II.     Procedural Background ...................................................................4

    III.    The Committees' Motion to Intervene and the District Court's
            Order Denying Intervention ...................................................5

SUMMARY OF ARGUMENT ...............................................................................8

STANDARD OF REVIEW ...................................................................................10

ARGUMENT .........................................................................................................11

    I.      The district court correctly held that the Committees have no
            legally protectable interest in this matter that might be
            impaired...........................................................................12

        A.     The Committees' proffered interest in Texas's election
              rules is insufficient to support intervention. ............................13

        B.     The Committees' proffered interest in advancing the
              electoral prospects of Republicans is insufficient to
              support intervention. ..............................................16

        C.     The Committees' purported interest in laws that regulate
              the conduct of partisan poll watchers is insufficient to
              support intervention as of right. ...............................19

    II.     The district court correctly held that the State Defendants
            adequately represent the Committees' interests in this case. .............20

        A.     Adequacy of representation is presumed because the
              Committees and the State Defendants share the same
              ultimate objective in defending SB 1.......................................21

B.      Adequacy of representation is presumed because the State represents the interests of its citizens.............................25

C.      The Committees fail to overcome either presumption. ...........26

D.      Even without a presumption of adequate representation, the Committees have not shown that the State Defendants' vigorous defense of SB 1 is insufficient to protect their interests.................................................................28

III.    The Committees have failed to identify any reversible error by the district court.....................................................................................30

CONCLUSION ...............................................................................................35

CERTIFICATE OF SERVICE ...............................................................................39

CERTIFICATE OF COMPLIANCE .........................................................................39

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Atlantis Dev. Corp. v. United States*,
   379 F.2d 818 (5th Cir. 1967) ...............................................................29

*Bates v. Tech Clean Indus.*,
   No. Civ.A. 301CV1304L, 2002 WL 32438759 (N.D. Tex. Oct. 15,
   2002) ......................................................................................................30

*Black Firefighters Ass'n of Dall. v. City of Dall.*,
   19 F.3d. 992 (5th Cir. 1994) .........................................................13, 14

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014) ......................................................passim

*Bush v. Viterna*,
   740 F.2d 350 (5th Cir. 1984) .......................................................28, 29

*Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*,
   940 F.2d 117 (5th Cir. 1991) ...............................................................28

*City of Hous. v. Am. Traffic Sols., Inc.*,
   668 F.3d 291 (5th Cir. 2012) ......................................................16, 17

*Daggett v. Comm'n on Gov't Ethics & Election Pracs.*,
   172 F.3d 104 (1st Cir. 1999) ...............................................................22

*Edwards v. City of Hous.*,
   78 F.3d 983 (5th Cir. 1996) (en banc) .......................................passim

*F.D.I.C. v. Mijalis*,
   15 F.3d 1314 (5th Cir. 1994) ...............................................................19

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) ...............................................................21

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003)..............................................................24

*Fusilier v. Landry*,
   963 F.3d 447 (5th Cir. 2020) ...............................................................29

*Hardin v. Ky. Utils. Co.*,
   390 U.S. 1 (1968).................................................................................18

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*,
   493 F.3d 570 (5th Cir. 2007) ........................................................22, 23

*Hopwood v. State of Tex.*,
   21 F.3d 603 (5th Cir. 1994) ................................................................25

*Issa v. Newsom*,
   No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June
   10, 2020) ..............................................................................................24

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
   806 F.2d 1285 (5th Cir. 1987) ......................................................22, 23

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) ..........................................................5, 29

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
   732 F.2d 452 (5th Cir. 1984) ......................................................12, 13

*OCA-Greater Hous. v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ..............................................................29

*Planned Parenthood of Wis., Inc. v. Kaul*,
   942 F.3d 793 (7th Cir. 2019) ..............................................................21

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) ..............................................................21

*Shays v. FEC*,
   414 F.3d 76 (D.C. Cir. 2005).......................................................17, 18

*Stuart v. Huff*,
   706 F.3d 345 (4th Cir. 2013) ..............................................................21

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ......................................................passim

*Theriot v. Par. Of Jefferson*,
　　No. Civ.A. 95-2453, 1996 WL 517695 (E.D. La. Sept. 11, 1996)....................30

*United States v. Franklin Par. Sch. Bd.*,
　　47 F.3d 755 (5th Cir. 1995) ...................................................................................2

*United States v. Jaramillo*,
　　175 F.3d 1009 (2d Cir. 1999) .............................................................................31

*Veasey v. Perry*,
　　577 F. App'x. 261 (5th Cir. 2014) ....................................................................28

*Vetterli v. U.S. Dist. Ct. for Cent. Dist. of Calif.*,
　　435 U.S. 1304 (1978).............................................................................................31

**STATUTES**

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. § 2403 ..................................................................................................29

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24 ...........................................................................................passim

Fed. R. Civ. P. 60(b) ..........................................................................................30

# INTRODUCTION

In a lawsuit challenging Texas's newly enacted Senate Bill 1 ("SB 1"), the Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee (collectively, the "Committees") sought intervention of right, citing interests in: (1) participating in elections under the current laws, (2) maintaining the current electoral environment, and (3) winning elections. The first two are generalized interests that courts regularly (and correctly) find insufficient to establish a right to intervene. As for the third, the Committees did not even attempt to explain *how* this litigation threatens their electoral prospects. The district court correctly held that these asserted interests fail to establish a right to intervene, and the Committees provide no reason to disturb that ruling. Instead, the Committees redouble their efforts on appeal, going so far as to raise additional arguments and offer new factual assertions not raised below. But the fact remains that their asserted interests are too abstract to establish a right to intervene. The Committees can neither identify interests that are unique to them—and not shared with virtually every citizen or participant in the political process—nor can they explain how such interests will be impaired by this litigation.

Even if this Court were to find that the Committees had established a legally protectable interest in this case, it should uphold the district court's decision for the

independent reason that the existing defendants in this case, including Texas Governor Greg Abbott, Attorney General Ken Paxton, and Secretary of State John Scott (the "State Defendants"), adequately represent the Committees' proffered interests. It is blackletter law that intervention of right is improper in these circumstances—namely when the defendants are state officials or share the same objective as the would-be intervenors—because adequacy of representation is presumed. And the Committees come nowhere close to overcoming that presumption. The State Defendants have vigorously defended SB 1 from the outset of this litigation, and the Committees fail to explain how any unique interests they might have arising from their desire to uphold SB 1 are not protected by that vigorous defense.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over the district court's order denying Appellants' motion to intervene under 28 U.S.C. § 1291 and the collateral order doctrine. *See Edwards v. City of Hous.*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc). But the Court's jurisdiction is "only provisional." *United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 758 (5th Cir. 1995). If "the Court determines that the motion to intervene as of right is without merit, the appropriate remedy is to dismiss for lack of appellate jurisdiction." *Id.*

## ISSUES PRESENTED

1.  Whether the district court properly concluded that the Committees' assertion of interests in upholding SB 1, or in winning elections—without any explanation of how this litigation impacts their candidates' electoral prospects—fails to establish a legally protectable interest in this case.

2.  Whether the district court properly concluded that the Committees' interests are adequately represented by the State Defendants who are tasked with upholding the law and have been vigorously defending SB 1.

## STATEMENT OF THE CASE

### I.    Factual Background

In 2020, Texas voters faced unprecedented obstacles to the ballot box. The COVID-19 pandemic reshaped everyday life by adding substantial risk to even the most quotidian in-person interactions. Despite these extraordinary challenges, Texas saw its highest voter turnout—and one of its closest statewide presidential election margins—in nearly 30 years. ROA.4219, 4282, 4368.

The State Defendants and members of the Texas legislature responded to this historic increase in turnout by turning their focus to legislation that would impose new regulations on most aspects of the voting process within the state. After a precursor to SB 1 failed when dozens of Democratic lawmakers departed the Texas Capitol leaving the House without a quorum, Governor Abbott called multiple

special sessions to pass the omnibus voting legislation. ROA.4245-46. The Texas legislature ultimately passed SB 1, and Governor Abbott signed it into law on September 7, 2021. ROA.4249. Among its provisions, SB1:

- Imposes new regulations on voter registration and removal, including new civil penalties for noncompliance of voter registrars. (Sections 2.04 – 2.07, and 2.10)

- Eliminates certain methods of voting, including drive-thru voting centers, 24-hour voting, and straight-ticket voting. (Sections 3.04, 3.09, 3.10, 3.12, 3.13, and 3.15)

- Expands the powers of partisan poll watchers and effectively eliminates ballot drop boxes. (Sections 4.01, 4.02, 4.06, 4.07, 4.09, 4.10, 4.12)

- Imposes new restrictions on voting by mail. (Sections 5.01-5.04, 5.07, 5.08, and 5.10-5.14)

- Creates additional obstacles for voters to receive assistance voting by mail or at the polls, including the imposition of criminal penalties for assistors. (Sections 6.01 and 6.03-6.07).

- Creates new criminal penalties relating to voting, including penalties relating to "vote harvesting." (Sections 7.02 and 7.04).

## II.    Procedural Background

In the immediate aftermath of SB 1's enactment, several groups of plaintiffs filed suit against the State Defendants and multiple county election officials (the "Local Defendants"), alleging that SB 1 violated the federal constitution, the Voting Rights Act, the Civil Rights Act, the Rehabilitation Act, and the Americans with Disabilities Act. These lawsuits were consolidated in the Western District of Texas

on September 30, 2021. *See* ROA.63-136 (*LUPE*); ROA.4761-4822 (*OCA-Greater Houston*); ROA.5012-5098 (*Houston Justice*); ROA.5295-5353 (*LULAC*); ROA.5579-561 (*Mi Familia Vota*). The United States filed its own lawsuit against SB 1 on November 4, *see* ROA.5640-5657, which was consolidated with the private suits on November 9, ROA.5685. In total, there are now more than 40 unique litigants across six consolidated lawsuits.

The State Defendants filed motions to dismiss the complaints on October 24 and 25. ROA.50. Plaintiffs filed amended complaints on November 30 and December 1, and the district court denied the motions to dismiss as moot on December 2. *See* ROA.4165-4184; ROA.4218-4280; ROA.4281-4357; ROA.4366-4493; ROA.4494-4588. On January 5 and January 7, the State Defendants filed renewed motions to dismiss, which are currently pending before the district court. Notwithstanding the pending motions, the parties are engaged in discovery in accordance with the district court's scheduling order, and the court has scheduled trial to begin on July 5, 2022. ROA.59.

## III.    The Committees' Motion to Intervene and the District Court's Order Denying Intervention

The Committees filed a motion to intervene in each of the consolidated private plaintiffs' cases on October 25, 2021. ROA.846.[1] The motion sought intervention as

---

[1] The Public Interest Legal Foundation filed a motion to intervene three weeks earlier on October

5

of right under Federal Rule of Civil Procedure 24(a), but requested, in the alternative, permissive intervention under Rule 24(b). In support of their request, the Committees asserted a "particularized interest in defending this action to preserve the structure of the competitive electoral environment and to ensure that Texas carries out free and fair elections." ROA.849. The Committees also asserted an interest in "winning elections." ROA.855.

The district court denied the motion on November 18. ROA.4145. In so doing, it identified two fatal flaws in the Committees' arguments. *First*, it found that "the Committees' motion d[id] not demonstrate a cognizable interest that would support intervention." ROA.4140. The Committees' alleged interest in "preserv[ing] the structure of the competitive electoral environment and to ensure that Texas carries out free and fair elections" was insufficient because it was not "concrete, personalized, and legally protectable," but rather "it is presumably shared by all Texans." *Id*. Similarly, the district court rejected the Committees' proffered interest in preventing "changes in the competitive environment for elections," which simply amounts to an "interest in a particular area of law" rather than "the challenged provisions of SB 1." ROA.4140-41. The court also held that, while "[t]he Committees' interests in electing their preferred candidates might very well be

_____

7, 2021. ROA.48. The district court denied the motion in a written order entered on November 16. ROA.58.

'direct, substantial, legally protectable interests,'" they did not "explain how any of these interests are connected to *these proceedings*." ROA.4141 (emphasis in original) (quoting *Edwards,* 78 F.3d at 1004).

*Second*, the district court held that "even if the Committees could establish a legally protectable interest at stake in this litigation, there is no reason to believe that the State Defendants' representation of the Committees' purported interests would be inadequate." ROA.4142. The court applied a presumption of adequate representation because the State Defendants and the Committees shared the "same ultimate objective," *i.e.*, upholding SB 1's constitutionality, and found the Committees' assertion that "the State Defendants 'ha[ve] more extensive interests to balance' than a private intervenor" insufficient to overcome that presumption. *Id*. The court further explained that "[t]o the extent that the Committees' interests hypothetically diverge from the State Defendants' insofar as they do not share the Committees' interest in 'electing particular candidates,' the Committees have offered no reason to believe that those partisan interests are at stake in this litigation.'" ROA.4143.

Finally, the district court denied permissive intervention. It held that "the Committees' failure to demonstrate a concrete interest in this action that will not be adequately represented by the State Defendants counsels against permissive intervention." *Id*. And it explained that "a generalized interest" in the outcome of the

litigation was "insufficient to justify adding a new party and counsel to an already complex case involving numerous parties and counsel, and where the proposed intervenor fails to show any unique legal interests or factual contributions that would aid in the resolution of this case." ROA.4144.

The Committees filed a notice of appeal of the district court's order on November 18. ROA.4146-4148.[2]

## SUMMARY OF ARGUMENT

The district court correctly denied the Committees' motion to intervene and the Committees provide no basis to overturn that ruling.

**I.** First, the Committees failed to carry their burden of demonstrating a concrete, personalized, and legally protectable interest that might be impaired by this litigation. The Committees first assert a general interest in the rules governing Texas's elections. But a general interest in election laws, without more, is not the sort of "personalized" interest that entitles the Committees to intervene as of right. Every Texas voter shares the Committees' interest in the state's rules governing the exercise of the franchise.

Perhaps recognizing that more is required, the Committees next point to an interest in advancing the overall election prospects of Republicans. But the Committees do not explain how this interest relates to SB 1, or why either upholding

---

[2] The Committees have not appealed the denial of permissive intervention.

or enjoining SB 1 will enhance or undermine Republican candidates' electoral prospects. The Committees bear the burden under Rule 24 to connect the dots and they have not done so.

Finally, the Committees argue that they have a viable interest in this litigation because SB 1 regulates the conduct of partisan poll watchers purportedly hired and trained by the Committees. But their briefing below failed to even mention poll watching, much less argue that such activities create a protectable interest sufficient to intervene. This argument is therefore forfeited and cannot provide a basis to overturn the district court's ruling. And even if it were not forfeited, this argument fails on its own terms because SB 1's provisions governing poll watchers to do not regulate the Committees' conduct in any way.

II.    Even assuming the Committees have cognizable interests for purposes of this litigation, those interests are adequately represented by the State Defendants. This Court presumes adequacy of representation where (i) the putative intervenor shares the same ultimate objective as an existing party to the litigation; and (ii) an existing party is charged by law with representing the putative intervenor's interests. The former presumption applies because the Committees and the State Defendants inarguably share the same ultimate objective in defending SB 1, and the Committees' threadbare recitation of speculative conflicts of interests make that no less so. The latter presumption applies because the State Defendants are tasked by

law with representing the Committees' Texas-based interests. The Committees must overcome those presumptions by showing that their interests diverge with those of the State Defendants in a manner germane to this litigation. But neither the Committees' nor the State Defendants' unique interests conflict in any material way.

In any event, the Committees have failed to show inadequate representation regardless of whether either presumption applies. Governor Greg Abbott, Attorney General Paxton, and Secretary of State Scott are among the most vocal defenders of SB 1 and have been vigorously defending the legality of the statute from the outset of this litigation. Whatever interests the Committees might have, they have not explained how those interests are inadequately protected by the State's vigorous defense.

**III.**    The Committees conclude by identifying six supposed errors by the district court which they contend are grounds for reversal—but none have merit. What the Committees identify as errors were in fact correct applications of the law or were immaterial to the district court's reasons for denying intervention and thus present no grounds for reversal.

## STANDARD OF REVIEW

This Court applies *de novo* review to the denial of a motion to intervene as of right. *Edwards*, 78 F.3d at 995. An applicant for intervention as of right bears the burden of proving all four requirements set forth in Federal Rule of Civil Procedure

10

24(a)(2): (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015). "Failure to satisfy any one requirement precludes intervention of right." *Edwards*, 78 F.3d at 999.

## ARGUMENT

Intervention of right in election law matters is not an automatic invitation to any party who may conceivably be interested in electoral outcomes. Yet the Committees' motion and subsequent appeal advances arguments that would guarantee intervention for all political parties, candidates, committees, and virtually anyone who has a stake in the voting process or is subject to its rules. They cite their desire to participate in elections under the current regulations and to preserve the current electoral environment, but that is just another name for upholding the law— a generalized interest that is shared with countless others and a task assigned specifically to the State Defendants. And while the Committees offer vague references to winning elections, they never get around to explaining the connection between SB 1's provisions and their electoral prospects, leaving the Court to take them at their word or connect the dots on its own.

11

If simply naming an interest—without regard to its relevance in the underlying claim—were enough to guarantee intervention, Rule 24(a) would impose no restriction at all. Having failed to identify a concrete, protectable interest that could be impaired by this litigation, and is not adequately represented by the existing parties, the Committees cannot satisfy their burden to demonstrate a right to intervene.

Finally, it is passing strange for the Committees to argue that their interests are inadequately represented by the State Defendants, who have been the most ardent defenders of SB 1 since its enactment and have vigorously defended this suit from the get-go. The Committees do not claim otherwise. But they seem to suggest that reciting their own interests—without showing how those interests would not be adequately protected by the State Defendants—is sufficient to demonstrate inadequate representation. That notion squarely contradicts controlling Fifth Circuit precedent, and as such this Court should affirm the decision below.

## I. The district court correctly held that the Committees have no legally protectable interest in this matter that might be impaired.

Rule 24(a) requires a putative intervenor to demonstrate that it has a "direct, substantial, legally protectable interest in the proceedings." *Edwards,* 78 F.3d at 1004 (5th Cir. 1984) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) ("*NOPSI*")). This interest must be "personalized," meaning that the interest "must be one which the substantive law

recognizes as belonging to or being owned by the applicant." *NOPSI*, 732 F.2d at 464; *see also Texas v. United* States, 805 F.3d 653, 657 (5th Cir. 2015) (same). An "ideological interest in the litigation" or a "generalized preference that the case come out a certain way" does not satisfy this requirement. *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). The prospective intervenor must also show that it is "so situated that the disposition of the action may, as a practical matter, impair or impede [its] ability to protect that interest." *NOPSI*, 732 F.2d at 463.[3]

### A.     The Committees' proffered interest in Texas's election rules is insufficient to support intervention.

The district court correctly held that the Committees flunked the protectable-interest standard, and it is easy to see why. The Committees first assert that they have "interests relating to participation in, and the outcome of, Texas elections governed by SB 1"—specifically, an interest "in the rules under which [the Committees and affiliated voters, candidates, and volunteers] exercise their constitutional rights to vote and to participate in elections in Texas." Appellants' Opening Br. (hereinafter "Br.") at 20. But all voters, candidates, political parties,

---

[3] The Committees assert that "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." Br. at 20 (quoting *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014)). But *Brumfield* does not lower the standard for public interest organizations; instead, it explained that one consideration in assessing a movant's interest is whether the purported interest falls within the zone of interests protected by the constitutional provision or statute at issue in the case. 749 F.3d at 343, 344. The Committees do not, and cannot credibly, invoke any interest protected by the challenged statute—nor are they "public interest" organizations.

and even election workers share an interest in Texas's election rules; there is nothing "personalized" about wanting to see rules enforced, nor is a general interest in the rules themselves sufficient to support intervention. *Edwards*, 78 F.3d at 1004.

The Committees cite to two cases where a movant's interest in "rules" purportedly passed this test, Br. at 24 (citing *Edwards*, 78 F.3d at 989; *Black Firefighters Ass'n of Dall. v. City of Dall.*, 19 F.3d. 992, 994 (5th Cir. 1994)), but both are distinguishable because the movants' interests in those cases were not shared by the general population. In *Edwards*, this Court held that a police officers' union had a sufficient interest in the Houston Police Department's promotion practices challenged in a race discrimination suit because the existing parties' consent decree limited the intervening officers' promotion opportunities. 78 F.3d at 989. The same was true in *Black Firefighters Association*, where this Court held that a firefighters' union could intervene in a challenge to the allegedly discriminatory promotional practices of the Dallas Fire Department. 19 F.3d at 994-95. In other words, the unions in both cases asserted an interest in consent decrees that governed the terms of their members' employment agreements and thus implicated a preexisting "personalized" interest. *Edwards*, 78 F.3d at 1004; *Black Firefighters Ass'n*, 19 F.3d at 994. In sharp contrast, there is no "personalized" interest in the rules that govern elections. Every Texas voter, political committee, and candidate—if not every Texan—shares the Committees' proffered interest in the rules under

14

which the right to vote is exercised in the State of Texas. This interest is not "personalized." *Edwards*, 78 F.3d at 1004.

It is no answer that the Committees spend resources on voter turnout programs. *See* Br. at 21. The Committees do not argue that this litigation over SB 1 impairs their voter turnout efforts in any way. And while the Committees note that certain Plaintiffs made similar allegations of expenditures for voter participation programs to support their standing to sue, *id.* at 24, those Plaintiffs clearly explained that SB 1 forced them to incur those costs by targeting methods of voting that are utilized disproportionately by the voters they represent and making it more difficult for Plaintiffs and their constituents to participate in the political process. *See, e.g.*, ROA.4224 ¶ 20 ("SB 1 erects new barriers to voting that impose significant burdens on LULAC's members and constituents; as a result, LULAC must divert resources from other programs and activities to address the adverse impacts [of] SB 1 and to assist its members and constituents in surmounting new barriers to registration and voting."); ROA.4290 ¶ 25 ("SB 1 forces REVUP to divert resources away from its established voter engagement programs and toward new initiatives to educate voters and volunteers about how to comply with certain provisions of SB 1."); ROA.4378-4380 ¶¶ 39-41 (similar). Because the Committees do not claim that—let alone explain how—this lawsuit will impact their voter turnout efforts in any way, their interest in Texas's election rules is no different from that of any other Texan and

therefore does not support a right to intervene.

**B.    The Committees' proffered interest in advancing the electoral prospects of Republicans is insufficient to support intervention.**

The district court correctly recognized that while the Committees may possess an "obvious interest in advancing the overall electoral prospects of Republican candidates in Texas," Br. at 21, they failed to explain how those interests were "connected to *these proceedings*, as required, and it is not the role of this Court to do that work for them." ROA.4141.

The Committees' opening brief fares no better. They reiterate their interest in electing Republicans, but never actually claim that their candidates' prospects would improve in any appreciable way if SB 1 were upheld (or that Republicans would fare worse if the law were struck down). Because the Committees do not assert that this challenge to SB 1 could "impair or impede" the chances of Republicans getting elected, this interest is insufficient to warrant intervention as of right.

And contrary to the Committees' assertions, this Court's ruling in *City of Hous. v. Am. Traffic Sols., Inc.*, 668 F.3d 291 (5th Cir. 2012) does not suggest otherwise. *See* Br. at 24. In fact, *City of Houston* further illustrates why intervention of right is inappropriate here. That case involved an attempt by political organizers to intervene in a dispute between the City of Houston and a contractor that operated a red-light camera system for the city. 668 F.3d at 292-93. Unlike the Committees here, the organizers had a clearly defined stake in the dispute: they had previously

launched a successful political campaign for a charter amendment that barred future use of the camera system. *Id.* In granting intervention, the Court explained that the lawsuit could have resulted in an injunction regarding the camera system that effectively overruled the charter amendment, and as such the organizers "demonstrated a particular interest in cementing their electoral victory and defending the charter amendment itself." *Id.* at 294.

While the Committees have asserted an interest in electoral victory, the similarities to *City of Houston* end there. There was no question that the litigation in *City of Houston* could have impaired or impeded the organizers' interest in their specific election victory. In contrast, the Committees have not even explained how this litigation affects their election prospects in general, let alone claimed it affects their prospects in a particular election, rendering any comparison inapposite and the Committees' proffered interest inadequate to support intervention as of right.

The Committees' reliance on *Shays v. FEC*, 414 F.3d 76 (D.C. Cir. 2005), and their purported "interest in maintaining the 'competitive environment' surrounding elections in Texas,'" is also misplaced. Br. at 21. *Shays* did not create a protectable interest in maintaining a specific "competitive environment." Rather, it recognized only an interest in preventing injury from the "*illegal structuring* of a competitive environment." *Shays*, 414 F.3d at 85 (emphasis added). The court in *Shays* explained that the candidate-plaintiffs there "suffer[ed] injury to a statutorily protected interest

17

if under [Federal Election Commission] rules they [had to] compete for office in contests tainted by [Bipartisan Campaign Reform Act]-banned practices." *Id*. The D.C. Circuit's reasoning rested on the "longstanding precedent" that "when a statute 'reflect[s] a legislative purpose to protect a competitive interest, [an] injured competitor has standing to require compliance with that provision.'" *Id*. (quoting *Hardin v. Ky. Utils. Co.*, 390 U.S. 1, 6 (1968)). In other words, the competitive injury in *Shays* arose from the prospect of competing candidates operating outside of established rules to the candidate-plaintiffs' disadvantage. But neither *Shays* nor any other precedent the Committees cite confers a blanket right to prevent changes in the law, whether by legislative action or a court injunction.

The Committees, furthermore, do not assert that SB 1's invalidation would "illegally structur[e]" the "competitive environment" of Texas elections. Nor do they invoke any statute reflecting a "legislative purpose to protect a competitive interest" that would conflict with such a ruling. Finally, and crucially, *Shays*' reasoning reveals that a general interest in maintaining a "competitive environment" or adopting a specific set of rules does not stand on its own: the plaintiff must still show that it is somehow *injured* by the change in the competitive environment or existing laws. *Id*. ("An *injured competitor* has standing to require compliance" with a "statute 'reflect[ing] a legislative purpose to protect a competitive interest'" (emphasis added) (quoting *Hardin,* 390 U.S. at 6)). As discussed, the Committees do not

explain how an adverse outcome here would injure the competitive prospects of Republican candidates.

### C.  The Committees' purported interest in laws that regulate the conduct of partisan poll watchers is insufficient to support intervention as of right.

The Committees also assert an argument on appeal that they failed to raise below: they claim a right to intervene because SB 1 regulates the conduct of partisan poll watchers purportedly recruited and trained by the Committees. Br. at 25. By neglecting to even mention poll watching much less advance this purported interest to justify intervention below, the Committees have forfeited this argument. *See F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

Forfeiture aside, this new argument provides no basis for reversing the decision below. The Committees fail to explain how these provisions regulate their conduct, and it is easy to see why: SB 1 restricts election officials from removing poll watchers, SB 1 § 4.01 (amending Tex. Election Code § 32.075); requires poll watchers to inform election officers of voting irregularities, SB 1 § 4.02 (amending Tex. Election Code § 33.0015); requires "the Secretary of State" to create an online

training program for watchers to issue certificates of completion to those who complete it, SB 1 § 4.04 (amending Tex. Election Code § 33.008); imposes criminal penalties on those who prevent poll watchers from accessing polling places, SB 1 §§ 4.06, 4.07, 4.09, 4.10 (amending Tex. Election Code §§ 33.051, 33.056, 33.061, 33.063); and grants expansive access to poll watchers at polling places, SB 1 § 4.08 (amending Tex. Election Code § 33.0605).

None of these provisions "involve the regulation of [the Committees'] conduct in any respect," only the conduct of poll watchers, and therefore do not support intervention as of right. *Texas*, 805 F.3d at 658. Indeed, poll watchers are trained by all manner of organizations and parties; regulating a poll watcher's conduct does not provide the sort of "personalized" interest sufficient to support intervention. *Id.* Were it otherwise, hundreds of organizations in Texas would have a right to intervene in this lawsuit. Fortunately for the more than 40 unique parties in this litigation, that is not the law.

## II.   The district court correctly held that the State Defendants adequately represent the Committees' interests in this case.

The district court also held correctly that the purported interests advanced by the Committees are adequately represented by the State Defendants in this case. To intervene as of right under Rule 24(a), the applicant must show that its interests are inadequately represented by the existing parties. "The burden of establishing inadequate representation is on the applicant for intervention." *Edwards*, 78 F.3d at

1005. And the applicant satisfies this burden by showing that "there is a serious possibility that the representation may be inadequate." *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015) (quoting *Wright & Miller* § 1909). The Committees have not met their burden.

### A.    Adequacy of representation is presumed because the Committees and the State Defendants share the same ultimate objective in defending SB 1.

This Court presumes adequacy of representation where, as here, "the would-be intervenor has the same ultimate objective as a party to the lawsuit," *id.* at 661 (quoting *Edwards*, 78 F.3d at 1005), and courts have repeatedly held that a putative intervenor and an existing party share the same ultimate objective when they seek to defend the legality of a challenged statute. *See Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 (7th Cir. 2019) ("[T]he Attorney General and the Legislature have the same objective—ensuring the validity of Wisconsin law—even if the Legislature might desire a more aggressive litigation position."); *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (agreeing with "fellow courts of appeals in holding that the putative intervenor must mount a strong showing of inadequacy" where "the government agency and the would-be intervenors want the statute to be constitutionally sustained."); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (similar); *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) (similar).

The Committees concede that they share with the State Defendants the same ultimate objective in defending SB 1. *See* Br. at 37. They insist, however, that the presumption of adequate representation does not apply because their interests "may not align precisely" since the State Defendants "have more extensive interests that the Republican Committees do not share." *Id*. That is not the law. As this Court has recognized, "[t]he general notion that the [government] represents 'broader' interests at some abstract level is not enough" to preclude application of the presumption. *Texas*, 805 F.3d at 663 (quoting *Daggett v. Comm'n on Gov't Ethics & Election Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999)).

This Court's decisions in *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570 (5th Cir. 2007), and *Kneeland v. Nat'l Collegiate Athletic Ass'n,* 806 F.2d 1285 (5th Cir. 1987), are instructive. In *Haspel*, a monetary judgment was entered against the Orleans Levee Board in a lawsuit brought by various landowners. The State of Louisiana moved to intervene on the side of the Levee Board in order to vacate the judgment. The State argued that it did not share "the same ultimate objective" as the Levee Board because its interests were "more expansive in that the State is seeking to ensure that Louisiana's anti-seizure [laws] are uniformly applied to prevent the seizure of public property and funds in satisfaction of any judgment, and not merely a judgment against the Levee Board." *Haspel*, 493 F.3d at 579. This Court disagreed:

22

> Nevertheless, even assuming that the State's interest is broader than that of the Levee Board, the more narrow issue regarding execution of the judgment against the Levee Board is the only matter currently before us. Thus, the Levee Board and the State have the same ultimate objective in this case.

*Id.* The Court accordingly held that the presumption of adequate representation applied and there was no basis for overcoming that presumption, thus the State lacked a right to intervene under Rule 24(a). *Id.*

And in *Kneeland*, Southern Methodist University (SMU) moved to intervene in a lawsuit brought by various media plaintiffs against the National Collegiate Athletic Association (NCAA) seeking the disclosure of documents relating to SMU's college football recruiting practices. 806 F.2d at 1286. The Court held that SMU and the NCAA had "the same ultimate objective . . . to prevent disclosure of the documents." *Id.* at 1288. That was true even though SMU alleged separate interests in the privacy of its own internal practices. *See id.*

The cases cited by the Committees are not to the contrary. In *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014), the parents of children with school vouchers sought to intervene in a dispute between the United States and Louisiana over whether the state's school voucher program complied with desegregation orders previously issued by federal courts. The Court held that while the parents and Louisiana shared an objective in vigorously defending the voucher program, Louisiana had separate interests in maintaining its relationships with the federal

government and with the courts that had continuing jurisdiction over desegregation orders. *Id.* at 346. Those separate interests cast doubt on whether Louisiana's *ultimate* objective was the defense of the scholarship program in its current form, as evidenced by the fact that Louisiana consented to the continuing jurisdiction of the district court while the parents objected to it. *Id.* No such conflict has materialized here, and the Committees offer no reason to question the State Defendants' commitment to defending and upholding SB 1.

Similarly, in *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), the D.C. Circuit held that existing representation was inadequate not solely because of differing interests between the intervenors and the parties, but because it was "not hard to imagine how [those differing] interests . . . might diverge during the course of litigation." *Id.* at 736. Put another way, a putative intervenor must show how a party's unique interests diverge from the representative's "in a manner germane to the case." *Texas*, 805 F.3d at 662.[4]

Here, by contrast, there is no doubt that the Committees and the State Defendants share the same ultimate objective. While the Committees point to various unique interests possessed by the State Defendants, they fail to explain how

---

[4] The only case cited by the Committees holding that differing interests, alone, are sufficient to overcome the presumption of adequate representation is an unpublished opinion from a California federal district court that has no precedential value and is contrary to the clear Fifth Circuit precedent discussed above. *See Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020).

those unique interests cast doubt on whether defending SB 1 is in fact the State Defendants' ultimate objective. For example, the Committees point to the State Defendants' interests in "enforcing the law" and in "preserving the contours of their legal authority." Br. at 36, 38. But, if anything, those unique interests *support* the notion that the State Defendants will mount a vigorous defense. And while the Committees argue that the State has separate interests in maintaining relationships with the federal government and local election officials, they do not even attempt to explain how those interests are at stake here such that they undercut the State Defendants' commitment to defending SB 1. After all, claiming that the government has "broader interests at some abstract level is not enough" to prevent the application of the presumption of adequate representation. *Texas*, 805 F.3d at 663.

### B.  Adequacy of representation is presumed because the State represents the interests of its citizens.

This Court also applies a presumption of adequate representation "when the putative intervenor is a governmental body or officer charged with representing the interests of the [putative intervenor]." *Texas*, 805 F.3d at 661 (quoting *Edwards*, 78 F.3d at 1005); *see also Hopwood v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994) ("In a suit involving a matter of sovereign interest, the State is presumed to represent the interests of all its citizens."). This governmental-representative presumption applies here, where the Harris County Republican Party and the Dallas County Republican Party are Texas-based organizations whose interests are presumptively

represented by the State. *Hopwood*, 21 F.3d at 605. And while the RNC, NRSC, and NRCC are national organizations, their proffered interests are in the electoral prospects of Texas candidates and the Texas voters who elect them—interests that the State Defendants are "charged by law with representing." *Edwards*, 78 F.3d at 1005.

The Committees argue that the governmental-representative presumption does not apply because "there 'is no suggestion' that any party is 'the [Republican Committees'] legal representative.'" Br. at 34 (quoting *Brumfield*, 749 F.3d at 345). To the extent the Committees are suggesting *Brumfield* narrowed the scope of this presumption, they are mistaken. *Brumfield* simply reiterated that a party is a "legal representative" for purposes of this presumption if it is a government entity charged by law with representing the putative intervenor's interests. 749 F.3d at 345 (citing *Edwards*, 78 F.3d at 1005). The Committees offer no other argument for why the governmental-representative presumption does not apply.

### C. The Committees fail to overcome either presumption.

A presumption of adequate representation is established both because the Committees and the State Defendants share an ultimate objective *and* because the State Defendants are charged with representing the Committees' interests here. The Committees must therefore overcome both presumptions and show that existing

representation is inadequate to demonstrate a right to intervene, and they have not done so.

When the "same ultimate objective" presumption applies, the putative intervenor "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Texas*, 805 F.3d at 661-62 (quoting *Edwards*, 78 F.3d at 1005). "Similarly, if the government-representative presumption applies, the intervenor must show 'that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].'" *Id.* at 662 (quoting *Edwards*, 78 F.3d at 1005). Under either standard, "an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Id.*

While the Committees point to certain interests that they claim are not shared by the State Defendants, such as a private interest in electing Republican candidates, as explained in section I.B. above, they have not shown that these are legally cognizable interests relate to this litigation. Nor have they demonstrated "how these allegedly divergent interests would have any impact on the state's defense of [SB 1]." *Texas*, 805 F.3d at 662. The Committees have therefore failed to overcome either presumption of adequate representation by the State Defendants, which is enough to affirm the district court's decision below.

**D. Even without a presumption of adequate representation, the Committees have not shown that the State Defendants' vigorous defense of SB 1 is insufficient to protect their interests.**

The State Defendants are adequately representing the Committees' interests in this case, regardless of whether any presumption applies, and notwithstanding the Committees' threadbare recitation of speculative conflicts. The requirement that the intervenor demonstrate inadequate representation "cannot be treated as so minimal as to write the requirement completely out of the rule." *Texas*, 805 F.3d at 661 (quoting *Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 120 (5th Cir. 1991)); *see Veasey v. Perry*, 577 F. App'x. 261, 263 (5th Cir. 2014) ("This requirement must have some teeth."). In cases where this Court has found representation to be inadequate, the intervenors made detailed showings of how the representation of existing parties fell short. *See Edwards*, 78 F.3d at 1005 (movant identified specific, relevant policy differences with the defendant city); *Brumfield*, 749 F.3d at 346 (movant identified unique interests by the State of Louisiana that could have led to adversity of interests).

Nowhere do the Committees explain how the State Defendants' vigorous defense of SB 1 will fail to protect their interests. Even assuming the Committees' desire to uphold SB 1 is driven by other motives, "the same positions and defenses will be presented in this suit, whether or not intervention is allowed . . . [thus] this case is more closely aligned with those cases in which courts have determined that

the burden of showing inadequacy of representation has not been met." *Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984). "[T]his is not a case in which we can say that [Republican Committees] are 'without a friend in this litigation.'" *Id.* at 358 (quoting *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 825 (5th Cir. 1967)).

As a last resort, the Committees argue that existing representation could be inadequate because the State Defendants have moved to dismiss the complaints on sovereign immunity grounds and that if those motions are granted, "there would be no party left in the case to pursue the objective of upholding SB 1 statewide." Br. at 39. This argument fails on several levels. For one thing, the State Defendants' sovereign immunity defense with respect to the Plaintiffs' Voting Rights Act claims has already been rejected by this Court on several occasions; it is settled law that "[t]here is no sovereign immunity with respect to Voting Rights Act claims." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020); *see Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020) (same); *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017) (same). The State Defendants will remain in the litigation.

Furthermore, even if the Court dismissed the State Defendants from the litigation, the State Defendants would retain the right to defend the constitutionality of SB 1 by seeking intervention under 28 U.S.C. § 2403. *See* 28 U.S.C. § 2403(b) (granting the State a right to intervene in a challenge to the constitutionality of its statutes). And even in the exceedingly unlikely event that the State Defendants left

SB 1 undefended in this litigation, the Committees have not explained how their proffered interests could be impaired by an adverse ruling here. *See* Section II.B., *supra*. Assuming all these hypothetical future events placed the Committees' asserted interests at risk, their remedy is to seek reconsideration of the order denying intervention. *See* Fed. R. Civ. P. 60(b); *see, e.g.*, *Bates v. Tech Clean Indus.*, No. Civ.A. 301CV1304L, 2002 WL 32438759, at *5 (N.D. Tex. Oct. 15, 2002); *Theriot v. Par. Of Jefferson*, No. Civ.A. 95-2453, 1996 WL 517695, at *1 (E.D. La. Sept. 11, 1996). It would be premature for this Court to grant intervention of right in anticipation of future rulings that may never come to pass.

### III.    The Committees have failed to identify any reversible error by the district court.

The Committees assert that the district court "reversibly erred" because of six perceived flaws which they claim formed the basis of the court's denial of their motion. Br. at 40-5. But all of these supposed "errors" are either misinterpretations of the proceedings or had nothing to do with the court's reasoning below.

*First*, the Committees complain that during the hearing for the motion, the "district court suggested [ ] that a movant must 'have standing' in order to be granted intervention under Rule 24." Br. at 41. The district court did no such thing: in a colloquy relating to an *entirely different* motion to intervene, the district court asked counsel for the State Defendants: "[I]f that's your position [not objecting to the motion to intervene filed by the Public Interest Legal Foundation] how does the

Public Interest Legal Foundation have standing when you're contending that the other defendants don't have standing?" ROA.4636. The court did not suggest that a movant needed to "have standing" to intervene. And, regardless, a stray comment is no basis for reversal: "[b]usy judges and busy lawyers do not invariably speak with mathematical precision in such a colloquy." *Vetterli v. U.S. Dist. Ct. for Cent. Dist. of Calif.*, 435 U.S. 1304, 1307 (1978) (in context of interpreting terms of injunction); *cf. United States v. Jaramillo*, 175 F.3d 1009 (2d Cir. 1999) (declining to remand "to clarify what is already clear" where district mistakenly used incorrect term in oral colloquy and in two written orders because what court meant was "unmistakabl[e]").

Furthermore, the district court's order denying intervention did not analyze whether the Committees had standing and, in fact, did not use the word "standing" at all. On the contrary, the court explicitly articulated this Court's test for intervention of right: "Only interests that are 'concrete, personalized, and legally protectable' are sufficient to support intervention as of right . . . . This inquiry 'turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way.'" ROA.4139. The court then denied the motion to intervene after applying this standard, without any discussion of "standing."

31

*Second*, the Committees argue that the district court erred by purportedly relying on the notion that the Committees' proffered interest in "ensur[ing] that Texas carries out free and fair elections" is "a mere 'ideological interest' that does not 'support intervention of right.'" Br. at 41. The Committees contend that this was not the interest on which they sought intervention in their motion. They are mistaken:

- "[T]he Republican Committees have a substantial and particularized interest in defending this action . . . to *ensure that Texas carries out free and fair elections.*" ROA.848-49 (emphasis added).

- "[The Republican Committees] each have a substantial interest in *ensuring that Texas runs free and fair elections* according to Texas law as enacted and enforced by Texans' representatives." ROA.849 (emphasis added).

- "The NRSC and NRCC have substantial and particularized interests in *ensuring that Texas carriers out free and fair elections.*" ROA.850 (emphasis added).

And even if the Committees had not repeatedly asserted an interest in free and fair elections, the district court did not commit reversible error because it also rejected the other interests the Committees invoked: "[T]he Committees fail to explain how a court order enjoining SB 1's enforcement would adversely impact the electoral prospects of Republican candidates." ROA.4141.

*Third*, the Committees claim that the district court erroneously held that they failed to connect their interests "to *these proceedings*." Br. at 42 (quoting ROA.4141). But the Committees indeed failed to make such a connection below, and their citations to the record only confirm this. The Committees simply cite to

their entire motion to intervene and subsequent reply brief, Br. 42 (quoting ROA.846-855, 1843-846), but fail to identify any specific instance where they connected their interests to this litigation.

*Fourth*, the Committees divine "reversible error" from a single sentence, shorn of context: that "the Committees' position would confer a right of intervention on any political entity in cases involving elections or election laws." Br. at 42 (quoting ROA.4141). The purported cause of offense is that the sentence "rested on the district court's faulty premise that the Republican Committees had asserted only a generalized 'interest in a particular area of law' and had not articulated 'legally protectable interests in SB 1.'" *Id*. But that is not true at all. The sentence was in fact located in the court's analysis rejecting the Committees' supposed interest in preventing "changes in the competitive environment." ROA.4141. As the court noted, the Committees never explained how they might be adversely affected, only that changes "invariably affect the interests of political parties and their allocation of resources." *Id.* And their refusal to provide any supporting explanation inappropriately shifts the burden to establish a legally protectable interest from themselves to the court.

Regardless, the district court was right: if a political committee has a "direct, substantial, legally protectable interest," *Edwards*, 78 F.3d at 1004, in preventing "changes in the competitive environment," with no requirement to explain *how* such

changes might adversely affect it, then it is hard to imagine in what electoral litigation a political organization might not have an absolute right to intervene. While such an intervenor would also need to satisfy the remaining Rule 24(a) factors, the Committees' claimed interest in any change that might ever affect a political contest effectively eliminates wholesale one of the threshold requirements for intervention.

*Fifth*, the Committees assert that the district court's order should be reversed because the court "suggested on the record" that "the State is more than ably represented and their positions are ably represented by the Attorney General's Office." Br. at 44 (quoting ROA.4637). Again, the Committees appeal the district court's order—not its stray comments during the hearing. And the district court's order applied the correct standard denying the motion to intervene by holding that the Committees' interests are adequately represented by the Attorney General's Office, which is representing the State Defendants.

*Finally*, the Committees dispute the district court's finding that the State Defendants adequately represent the Committees' interests and that the Committees did not overcome the presumption of adequacy. Br. at 44-45. Supposedly, this was in error because the Committees "bore no burden" to make such a showing—in effect, insisting that no presumption applied because they have an "interest in electing particular candidates." *Id.* at 44. But as discussed at length in the briefing

below, by the district court in its order, and above in this very brief, the Committees *do* bear the burden of demonstrating inadequacy because they have the "same ultimate objective" as the State Defendants, *i.e.*, upholding SB 1. The differences in specific motivations are immaterial.

## CONCLUSION

The Court should affirm the district court's denial of the Committees' Motion to Intervene.

Dated: January 19, 2022                    Respectfully Submitted,

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta
   *Counsel of Record*
Graham W. White
Noah B. Baron
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, DC 20002
unkwonta@elias.law

*Counsel of Record for Plaintiffs-
Appellees and Attorneys for
Plaintiffs LULAC Texas, Voto
Latino, Texas Alliance for Retired
Americans, and Texas AFT*

/s/ Nina Perales
Nina Perales
Julia R. Longoria
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
Facsimile: (210) 224-5382
nperales@maldef.org
jlongoria@maldef.org

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
michael.keats@friedfrank.com
rebecca.martin@friedfrank.com
jason.kanterman@friedfrank.com

*Attorneys for Plaintiffs*
LA UNIÓN DEL PUEBLO
ENTERO, SOUTHWEST VOTER
REGISTRATION EDUCATION
PROJECT, MEXICAN AMERICAN
BAR ASSOCIATION OF TEXAS,
TEXAS HISPANICS ORGANIZED
FOR POLITICAL EDUCATION,
JOLT ACTION, WILLIAM C.
VELASQUEZ INSTITUTE, FIEL
HOUSTON INC.

/s/ Sean Morales-Doyle
Sean Morales-Doyle
Eliza Sweren-Becker
Patrick A. Berry
Andrew B. Garber
Jasleen K. Singh
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: (646) 292-8310
Facsimile: (212) 463-7308
sean.morales-doyle@nyu.edu
eliza.sweren-becker@nyu.edu
patrick.berry@nyu.edu
andrew.garber@nyu.edu
jasleen.singh@nyu.edu

Paul R. Genender
Elizabeth Y. Ryan
Matthew Berde
Megan Cloud
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
Paul.Genender@weil.com
Liz.Ryan@weil.com
Matt.Berde@weil.com
Megan.Cloud@weil.com

Alexander P. Cohen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8020
Facsimile: (212) 310-8007
Alexander.Cohen@weil.com

Sean Lyons (Tex. Bar No. 00792280)
Clem Lyons (Tex. Bar No. 12742000)
LYONS & LYONS, P.C.
237 W. Travis Street, Suite 100
San Antonio, Texas 78205
Telephone: (210) 225-5251
Telefax: (210) 225-6545
Sean@lyonsandlyons.com
Clem@lyonsandlyons.com

/s/ Courtney Hostetler
Courtney Hostetler
Ron Fein
John Bonifaz
Ben Clements
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
rfein@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

Wendy J. Olson
Laura E. Rosenbaum
Marc Rasich
Elijah Watkins
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205

*Attorneys for Plaintiffs:*
MI FAMILIA VOTA, MARLA
LOPEZ, MARLON LOPEZ, PAUL
RUTLEDGE

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
zack.tripp@weil.com

*Attorneys for Plaintiffs:*
FRIENDSHIP-WEST BAPTIST
CHURCH, ANTI-DEFAMATION
LEAGUE AUSTIN, SOUTHWEST,
AND TEXOMA REGIONS, TEXAS
IMPACT, JAMES LEWIN

/s/ Kenneth E. Broughton
Kenneth E. Broughton
Texas Bar No. 03087250
J. Keely Dulaney
Texas Bar No. 24116306
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
kbroughton@reedsmith.com
kdulaney@reedsmith.com

Sarah Cummings Stewart
Texas Bar No. 24094609
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
scummings@reedsmith.com

Kathryn Sadasivan
Amir Badat
NAACP Legal Defense and Educational
Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
ksadasivan@naacpldf.org
abadat@naacpldf.org

Jennifer A. Holmes
Georgina Yeomans
NAACP Legal Defense and Educational
Fund, Inc.
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 682-1300
Facsimile: (202) 682-1312
jholmes@naacpldf.org
gyeomans@naacpldf.org

Shira Wakschlag*
The Arc of the United States, Inc.
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: (202) 534-3708
Facsimile: (202) 534-3731
Wakschlag@thearc.org

*Application for Admission
Forthcoming*

*Attorneys for Plaintiffs:*
HOUSTON JUSTICE; HOUSTON
AREA URBAN LEAGUE; DELTA
SIGMA THETA SORORITY, INC.;
THE ARC OF TEXAS; AND JEFFREY
LAMAR CLEMMONS

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for the Plaintiffs-Appellees are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B) because this document contains 8238 words, excluding parts exempted by Rule 32(f).

This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta