No. 21-51145

In the
𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals for the 𝔉ifth 𝔆ircuit

LA UNION DEL PUEBLO ENTERO; FRIENDSHIP-WEST BAPTIST
CHURCH; THE ANTI-DEFAMATION LEAGUE AUSTIN, SOUTHWEST,
AND TEXOMA; SOUTHWEST VOTER REGISTRATION EDUCATION
PROJECT; TEXAS IMPACT; MEXICAN AMERICAN BAR ASSOCIATION
OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION;
JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; JAMES LEWIN;
FIEL HOUSTON, INCORPORATED; MI FAMILIA VOTA; MARLA LOPEZ;
PAUL RUTLEDGE,
*Plaintiffs-Appellees*,

v.

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS
GOVERNOR OF TEXAS; ET AL,
*Defendants*,

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN
PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE,
*Movants-Appellants*.

(captions continued on inside cover)

On Appeal From The United States District Court
For The Western District Of Texas

## APPELLANTS' REPLY BRIEF

January 26, 2022

*Not admitted in DC; supervised by a licensed
DC bar member

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
S. Matthew Krsacok*
JONES DAY
51 Louisiana Ave., NW
Washington, DC  20001-2113
(202) 879-3939
jmgore@jonesday.com

*Counsel for Movants-Appellants*

**OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS; REVUP-TEXAS; TEXAS ORGANIZING PROJECT; WORKERS DEFENSE ACTION FUND,**

*Plaintiffs-Appellees,*

v.

**JOSE A. ESPARZA, IN HIS OFFICIAL CAPACITY AS DEPUTY SECRETARY OF THE STATE OF TEXAS; ET AL,**

*Defendants,*

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,**

*Movants-Appellants.*

**HOUSTON JUSTICE; DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON AREA URBAN LEAGUE; THE ARC OF TEXAS; JEFFREY LAMAR CLEMMONS,**

*Plaintiffs-Appellees,*

v.

**GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL,**

*Defendants,*

**HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,**

*Movants-Appellants.*

(captions continued on next page)

LULAC TEXAS; VOTE LATINO; TEXAS ALLIANCE FOR RETIRED
AMERICANS; TEXAS AFT ,
*Plaintiffs-Appellees,*

v.

JOSE ESPARZA, IN HIS OFFICIAL CAPACITY AS THE
TEXAS DEPUTY SECRETARY OF STATE; ET AL,
*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN
PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE,
*Movants-Appellants.*

MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL RUTLEDGE,
*Plaintiffs-Appellees,*

v.

GREGORY ABBOTT, IN HIS OFFICIAL CAPACITY AS
GOVERNOR OF TEXAS; ET AL,
*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN
PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE,
*Movants-Appellants.*

UNITED STATES OF AMERICA ,
*Plaintiffs-Appellees,*

v.

STATE OF TEXAS; ET AL,
*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN
PARTY; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE,
*Movants-Appellants.*

## CERTIFICATE OF INTERESTED PERSONS

### No. 21-51145, *La Union Del Pueblo Entero, et al.* v. *Gregory W. Abbott, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Movants-Appellants:

- Harris County Republican Party
- Dallas County Republican Party
- Republican National Committee
- National Republican Senatorial Committee
- National Republican Congressional Committee

2.    Counsel for Movants-Appellants:

- John M. Gore
- E. Stewart Crosland
- Stephen J. Kenny
- S. Matthew Krsacok
- Jones Day

3.    Plaintiffs-Appellees:

- La Union Del Pueblo Entero
- Friendship-West Baptist Church
- The Anti-Defamation League Austin, Southwest, and Texoma Regions
- Southwest Voter Registration Education Project

- Texas Impact
- Mexican American Bar Association Of Texas
- Texas Hispanics Organized For Political Action
- Jolt Action
- William C. Velasquez Institute
- Fiel Houston Inc.
- Isabel Longoria
- James Lewin
- Mi Familia Vota
- Marla Lopez
- Marlon Lopez
- Paul Rutledge
- Houston Justice
- Houston Area Urban League
- Delta Sigma Theta Sorority Inc.
- The Arc of Texas
- Jeffrey Lamar Clemmons
- LULAC Texas
- Vote Latino
- Texas Alliance for Retired Americans
- Texas AFT
- OCA-Greater Houston
- League of Women Voters of Texas
- REVUP-Texas
- Texas Organizing Project
- Workers Defense Action Fund
- United States of America

4.    Counsel for Plaintiffs-Appellees La Union Del Pueblo Entero, Southwest Voter Registration Education Project, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Action, Jolt Action, William C. Velasquez Institute, and Fiel Houston Inc.:

- Nina Perales

- Michael C. Keats
- Rebecca L. Martin
- Jessica M. Choi
- Christopher Bell
- Kevin Zen
- Jason S. Kanterman
- Mexican American Legal Defense & Education Fund
- Fried, Frank, Harris, Shriver & Jacobson LLP

5.    Counsel for Plaintiffs-Appellees Friendship-West Baptist Church, Anti-Defamation League Austin, Southwest, and Texoma Regions, Texas Impact, Isabel Longoria, and James Lewin:

- Sean Morales-Doyle
- Eliza Sweren-Becker
- Patrick A. Berry
- Andrew B. Garber
- Elizabeth Y. Ryan
- Paul R. Genender
- Matthew Berde
- Megan Cloud
- Alexander P. Cohen
- Weil, Gotshal & Manges LLP
- Brennan Center for Justice
- Brennan Center for Justice at NYU Law School

6.    Counsel for Plaintiff-Appellee Isabel Longoria:

- Christian P. Menefee
- Jonathan Fombonne
- Tiffany Bingham
- Sameer Birring
- Radiah Rondon
- Susannah Mitcham
- Office of the Harris County Attorney

7.    Counsel for Plaintiffs-Appellees Mi Familia Vota, Marla Lopez, Marlon Lopez, and Paul Rutledge:

- Ben Clements
- Laura E. Rosenbaum
- Wendy J. Olson
- Courtney M. Hostetler
- Elijah M. Watkins
- John Bonifaz
- Marc T. Rasich
- Ronald A. Fein
- Sean Michael Lyons
- Free Speech for People
- Stoel Rives LLP
- Lyons & Lyons, PC

8.    Counsel for Plaintiffs-Appellees Houston Justice, Houston Area Urban League, Delta Sigma Theta Sorority Inc., The Arc of Texas, and Jeffrey Lamar Clemmons:

- Georgina Yeomans
- J. Keely Dulaney
- Jennifer A. Holmes
- Kathryn Sadasivan
- Kenneth E. Broughton, Jr.
- Lora Spencer
- Sarah M. Cummings
- Shira Wakschlag
- Mohammed A. Badat
- NAACP Legal Defense & Education Fund, Inc.
- Reed Smith LLP
- The Arc of the United States

9.    Counsel for LULAC Texas, Vote Latino, Texas Alliance for Retired Americans, and Texas AFT:

- Domingo A. Garcia
- Graham White
- John Russell Hardin
- Jonathan Patrick Hawley
- Joseph N. Posimato
- Kathryn E. Yukevich
- Marc Erik Elias
- Meaghan E. Mixon
- Uzoma N. Nkwonta
- Noah Baron
- Elias Law Group LLP
- Perkins Coie, LLP

10.    Counsel for Plaintiffs-Appellees OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project, and Workers Defense Action Fund:

- Adriel Cepeda-Derieux
- Andre I. Segura
- Hani Mirza
- Jerry Vattamala
- Jessica Ring Amunson
- Lia Sifuentes Davis
- Lucia Romano Ostrom
- Mimi M.D. Marziani
- Patrick Stegemoeller
- Ryan V. Cox
- Samantha Osaki
- Savannah Kumar
- Sophia Lin Lakin
- Susana Lorenzo-Giguere

- Thomas Paul Buser-Clancy
- Urja Mittal
- Ari Savitzky
- Ashley Alcantara Harris
- American Civil Liberties Union Foundation
- Texas Civil Rights Project
- Asian American Legal Defense And Education Fund
- Jenner & Block LLP
- Disability Rights Texas
- ACLU Foundation of Texas

11.    Counsel for Plaintiff-Appellee United States of America:

- Daniel Joshua Freeman
- Jennifer Jaeseon Yun
- Michael Elliot Stewart
- Richard Alan Dellheim
- Thomas Christian Herren , Jr.
- Dana Paikowsky
- Erin Helene Flynn
- Katherine Elmlinger Lamm
- U.S. Department of Justice

12.    Defendants

- Gregory W. Abbott, Governor of Texas
- John B. Scott, Texas Secretary of State
- Jose A. Esparza, Former Acting Texas Secretary of State
- Warren K. Paxton, Attorney General of Texas
- Lupe C. Torres, Medina County Elections Administrator
- Lisa Wise, El Paso County Elections Administrator
- Isabel Longoria, Harris County Elections Administrator
- Jacque Callanen, Elections Administrator of Bexar County
- Yvonne Ramon, Hidalgo County Elections Administrator
- Michael Scarpello, Dallas County Elections Administrator
- Dana DeBeauvoir, Travis County Clerk

13.    Counsel for Defendants Gregory W. Abbott, John B. Scott, Jose A. Esparza, and Warren K. Paxton:

- Patrick K. Sweeten
- Jeffrey Michael White
- Eric A. Hudson
- Office of the Texas Attorney General

14.    Counsel for Defendant Lupe C. Torres:

- Chad Ennis
- Robert E. Henneke
- Texas Public Policy Foundation

15.    Counsel for Defendant Lisa Wise:

- Angelica Lien Leo
- Beatriz Mejia
- Christine Sun
- Germaine Habell
- Kathleen Hartnett
- Kelsey Spector
- Orion Armon
- Ranjana Natarajan
- Sharon Song
- Zack Goldberg
- Cooley LLP
- States United Democracy Center

16.    Counsel for Defendant Isabel Longoria:

- Jonathan Fombonne
- Sameer Birring
- Office of the Harris County Attorney

17.    Counsel for Defendant Jacque Callanen:

- Robert D. Green
- Bexar County District Attorney

18.    Counsel for Defendant Yvonne Ramon:

- Josephine L. Ramirez
- Leigh Ann Tognetti
- Hidalgo County District Attorney's Office

19.    Counsel for Defendant Michael Scarpello:

- Barbara S. Nicholas
- Ben L. Stool
- Dallas County District Attorney's Office

20.    Counsel for Defendant Dana DeBeauvoir:

- Anthony J. Nelson
- Leslie W. Dippel
- Patrick T. Pope
- Sherine Elizabeth Thomas
- Travis County Attorney's Office

21.    Amicus Foundation For Government Accountability

22.    Counsel for Amicus Foundation For Government Accountability:

- Donna Garcia Davidson
- Chase Martin
- Stewart Whitson

23.    Proposed Intervenor Public Interest Legal Foundation

24.    Counsel for Proposed Intervenor Public Interest Legal

Foundation:

- Andy Taylor
- Maureen Riordan
- Kaylan L. Phillips

Dated: January 26, 2022          Respectfully submitted,

*/s/ John M. Gore*
_____

*Counsel of Record for Movants-
Appellants*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................... i

TABLE OF AUTHORITIES .................................................... xi

INTRODUCTION ................................................................ 1

ARGUMENT .................................................................... 1

I.   THE COURT SHOULD GRANT THE REPUBLICAN
     COMMITTEES INTERVENTION OF RIGHT ................................. 1

     A.   The Republican Committees Satisfy Rule 24(a)'s
          Requirements For Intervention Of Right .................................. 1

          1.   The Republican Committees Have Personalized
               Interests Relating To SB 1 ..................................... 2

          2.   The Republican Committees' Ability to Protect Their
               Interests May Be Impaired By This Action ......................... 8

          3.   No Party To The Case Adequately Represents The
               Republican Committees' Interests In SB 1 ....................... 14

     B.   The Private Plaintiffs And The United States Fail To
          Rehabilitate The District Court's Legal Errors ....................... 20

CONCLUSION .................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Black Fire Fighters Ass'n of Dall. v. City of Dallas,*
   19 F.3d 992 (5th Cir. 1994) ................................................................ 4, 5

*Brumfield v. Dodd,*
   749 F.3d 339 (5th Cir. 2014) ...................................................... *passim*

*Burdick v. Takushi,*
   504 U.S. 428 (1992) .................................................................................. 3

*City of Houston v. Am. Traffic Sols., Inc.,*
   668 F.3d 291 (5th Cir. 2012) ................................................................. 5

*Edwards v. City of Houston,*
   78 F.3d 983 (5th Cir. 1996) (en banc) ........................................ 4, 5, 17

*Eu v. S.F. Cnty. Democratic Cent. Comm.,*
   489 U.S. 214 (1989) .................................................................................. 3

*Freedom from Religion Found., Inc. v. Geithner,*
   644 F.3d 836 (9th Cir. 2011) ............................................................... 18

*Haspel & Davis Milling & Planting Co. v. Bd. of*
   *Levee Comm'rs of the Orleans Levee Dist.,*
   493 F.3d 570 (5th Cir. 2007) ............................................................... 17

*Hopwood v. Texas,*
   21 F.3d 603 (5th Cir. 1994) ................................................................. 19

*Issa v. Newsom,*
   No. 20-cv-01044, 2020 WL 3074351
   (E.D. Cal. June 10, 2020) ...................................................................... 6

*Kneeland v. Nat'l Collegiate Athletic Ass'n,*
   806 F.2d 1285 (5th Cir. 1987) ............................................................. 17

*League of United Latin Am. Citizens,*
   *Dist. 19 v. City of Boerne,*
   659 F.3d 421 (5th Cir. 2011) ................................................................. 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................. 11, 13, 14

*Paher v. Cegavske*,
  No. 20-cv-00243, 2020 WL 2042365
  (D. Nev. Apr. 28, 2020) ...................................................................... 6

*Planned Parenthood of Wis., Inc. v. Kaul*,
  942 F.3d 793 (7th Cir. 2019) ............................................................ 18

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) ............................................................ 18

*Shays v. FEC*,
  414 F.3d 76 (D.C. Cir. 2005) .................................................... 4, 5, 13

*Stuart v. Huff*,
  706 F.3d 345 (4th Cir. 2013) ............................................................ 18

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ...................................................... *passim*

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) .......................................................................... 14

*Veasey v. Perry*,
  577 F. App'x 261 (5th Cir. 2014) ...................................................... 20

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
  834 F.3d 562 (5th Cir. 2016) ........................................................ 8, 17

**STATUTES**

Tex. Elec. Code § 33.003 ........................................................................ 7

**OTHER AUTHORITIES**

7C Charles Alan Wright, et al., *Federal Practice &*
  *Procedure* § 1908.1 (3d ed. Apr. 2021 update) .................................... 8

Fed. R. Civ. P. 24 .......................................................................... *passim*

**INTRODUCTION**

Time and again, major political parties have used the liberal intervention rights afforded by Federal Rule of Civil Procedure 24 to defend election laws, in which they have an obvious interest. This case should be no different. Appellants Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee (collectively, the "Republican Committees") have easily met their minimal burden to satisfy the requirements for intervention of right under Rule 24(a)(2). Neither the private plaintiffs nor the United States have asserted any new or persuasive ground on appeal to defend the district court's wrongful denial of the Republican Committees' timely motion to intervene. The Court should reverse that denial and grant the Republican Committees intervention.

**ARGUMENT**

## I. THE COURT SHOULD GRANT THE REPUBLICAN COMMITTEES INTERVENTION OF RIGHT

### A. The Republican Committees Satisfy Rule 24(a)'s Requirements For Intervention Of Right

The Republican Committees easily satisfy each of Rule 24(a)'s

minimal requirements for intervention of right. *See* Opening Brief ("Br.") 17–40. The private plaintiffs and the United States do not dispute that the Republican Committees' motion was timely. *See* Private Plaintiffs' ("Pls.'") Br. 11; U.S. Br. 9. Instead, they challenge the adequacy of the Republican Committees' showing on the interest, impairment, and adequacy-of-representation requirements. Each of their challenges fails, and the Court should reverse the decision below and grant the Republican Committees intervention of right.

### 1. The Republican Committees Have Personalized Interests Relating To SB 1

The Republican Committees have at least two sets of personalized interests "relating to" SB 1 that satisfy the "minimal" burden for intervention of right. Br. 18–26. In the first place, the Republican Committees have clear and personalized interests—on behalf of the Republican Committees themselves as well as their voters, candidates, and volunteers—in the rules under which the Committees and those individuals exercise their constitutional rights to vote and to participate in elections in Texas. *See id.* at 20–25. Moreover, the Republican Committees have an interest in this litigation because SB 1 directly

regulates the conduct of the Committees and their volunteer poll watchers. *See id.* at 25–26.

Neither the private plaintiffs nor the United States dispute that the Republican Committees and their voters, candidates, and volunteers have constitutional rights to vote and to participate in elections in Texas. Nor could they. *See, e.g.*, *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 222–23 (1989); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *see also* Br. 3–7, 21. Instead, the private plaintiffs and the United States advance five arguments on the interest requirement, but none defeats the Republican Committees' showing of cognizable interests "relating to" SB 1—the "property or transaction that is the subject of the action"— sufficient to warrant intervention of right. *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015); *see also Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014).

*First*, the private plaintiffs and the United States contend that "every Texan" shares the Republican Committees' "generalized" interest in the rules governing Texas elections. Pls.' Br. 14; *see also* U.S. Br. 9, 13. But as the private plaintiffs acknowledge, a putative intervenor has a "personalized" interest sufficient to satisfy Rule 24(a)(2) in a lawsuit

challenging the "rules" that govern its "opportunities" for advancement. Pls.' Br. 14 (discussing *Edwards v. City of Houston*, 78 F.3d 983, 989, 1004 (5th Cir. 1996) (en banc) and *Black Fire Fighters Ass'n of Dall. v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994)); *see also* U.S. Br. 16 (similar). Indeed, the Republican Committees have not asserted a mere interest in "knowing and operating within the rules that govern partisan elections," U.S. Br. 9, or in "the rules" themselves, Pls.' Br. 14. Instead, the Committees have demonstrated clear and cognizable interests in supporting and mobilizing Republican voters and volunteers, in Republicans winning elections, and in preventing changes to the "competitive environment" in which they compete for electoral opportunities and expend resources. *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005). Those interests are not shared by "[e]very . . . voter, political committee, and candidate" in the state. Pls.' Br. 14. Thus, it is unsurprising that other courts have deemed a political party's interests in winning elections and in supporting its candidates, voters, and volunteers sufficient to satisfy the interest requirement. *See* Br. 23–24.

*Second*, the private plaintiffs and the United States argue that the Republican Committees' interest in upholding the "challenged rules" that

create the "competitive environment" for elections in Texas does not warrant intervention of right. U.S. Br. 14; Pls.' Br. 17–18. That interest, however, is identical to the interest that at least some private plaintiffs in these cases have invoked to support their standing allegations and challenges to SB 1, *see* Br. 22–23; *see also* Pls.' Br. 15 ("certain Plaintiffs made similar allegations of expenditures for voter participation programs to support their standing to sue"), and that the D.C. Circuit has found sufficiently weighty to establish Article III standing in cases challenging election rules, *see Shays*, 414 F.3d at 85. Moreover, it is "remarkably similar to the interest[s]" this Court has found sufficient to satisfy Rule 24(a)(2), *Brumfield*, 749 F.3d at 343, including the interests in "cementing . . . electoral victory," *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012), in the "right to vote in elections," *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011), and in the rules governing promotion opportunities, even where the employee is not entitled to a promotion, *Edwards*, 78 F.3d at 989, 1004; *Black Fire Fighters Ass'n of Dall.*, 19 F.3d at 994; *see also* Br. 24–25.

*Third*, the United States attempts to distinguish the prior district court opinions granting political party committees intervention of right, arguing that those cases involved efforts to "enable [the party's] voters to vote safely during the COVID-19 pandemic." U.S. Br. 15 (citing *Issa v. Newsom*, No. 20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *Paher v. Cegavske*, No. 20-cv-00243, 2020 WL 2042365, at *2–3 (D. Nev. Apr. 28, 2020)). In fact, those courts recognized that protecting "the rights of their members to vote," "advancing [the party's] overall electoral prospects," "diverting their limited resources to educate their members on the election procedures," *Issa*, 2020 WL 3074351, at *3, and "ensur[ing] the election of [their preferred] candidates," *Paher*, 2020 WL 2042365, at *2, suffice to warrant intervention of right. *See also* Order (Dkt. 31), *Perez v. Perry*, No. 11-cv-00360 (W.D. Tex. July 12, 2011) (three-judge court). Those are the very interests that the Republican Committees have established here. *See* Br. 18–26.

*Fourth*, the private plaintiffs and the United States argue that the Republican Committees did not raise their interest in the regulation of their volunteer poll watchers in "the district court." U.S. Br. 17; Pls.' Br. 19. But "poll watchers" are synonymous with "election observers," and

the Republican Committees explained to the district court that they "have a substantial and particularized interest in the election laws under which . . . [they] expend their resources mobilizing and educating . . . *election observers*" and other "volunteers." ROA.1842 (emphasis added), ROA.1843, ROA.1846. Moreover, SB 1's regulation of poll watchers is part and parcel of "the challenged election laws under which [the Republican Committees], their voters, their members, and their candidates exercise their constitutional rights to vote and to participate in elections in Texas." ROA.847–848.

The private plaintiffs thus fall back on an argument that SB 1's regulation of poll watchers somehow does *not* regulate the conduct of the political parties that the poll watchers represent and are appointed by. *See* Pls.' Br. 20. Yet the Republican Committees must ensure that the individuals they appoint to appear as poll watchers, *see* Tex. Elec. Code § 33.003, comply with the governing rules and regulations, including the rules imposed by SB 1. SB 1 therefore directly regulates the "conduct" of the Republican Committees' poll watchers and of the Committees in selecting, appointing, and training them. *Texas*, 805 F.3d at 658.

*Finally*, the United States asserts that "merely being subject to regulation under a challenged law" does not "confer[] an interest sufficient to justify intervention of right." U.S. Br. 18. That assertion contravenes controlling precedent. *See, e.g.*, *Texas*, 805 F.3d at 658. Indeed, "in cases challenging various statutory schemes as unconstitutional . . . the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." 7C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1908.1 (3d ed. Apr. 2021 update); *accord Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 567 (5th Cir. 2016) (associations acting on behalf of their members "have a right to intervene in lawsuits challenging the regulatory scheme that governs the profession"). Thus, that SB 1 regulates the Republican Committees and their poll watchers further underscores that intervention of right is warranted. *See* Br. 25–26.

## 2. The Republican Committees' Ability to Protect Their Interests May Be Impaired By This Action

The Republican Committees have also made the "minimal" showing required to demonstrate that their cognizable interests "may" be impaired by disposition of this action. *Brumfield*, 749 F.3d at 344 & n.2.

Absent intervention, the Republican Committees will have no recourse to protect their interest in upholding SB 1 against the injunctions that the private plaintiffs and the United States seek. *See* Br. 27–32. Such an injunction, moreover, may harm the Republican Committees' interests in participating in elections, maintaining the competitive electoral environment, winning elections, and deploying effective poll watchers. *See id.* This impairment of the Republican Committees' interests would be particularly serious if an injunction issues after elections already have been conducted under SB 1 or shortly before an election. *See id.* at 31.

The United States concedes that an injunction against one or more provisions of SB 1 may require the Republican Committees to "alter [their] approach" to participating in elections in Texas. U.S. Br. 19. The United States further concedes that the Republican Committees "may need to train volunteers and educate voters . . . on the applicable rules" if the district court enters an injunction in this case. *Id.* at 20. These concessions alone end the discussion on the impairment requirement in the Republican Committees' favor. *See, e.g.*, Br. 27–32; *Brumfield*, 749 F.3d at 344.

The private plaintiffs and the United States nonetheless offer four arguments in an attempt to rebut the Republican Committees' showing of impairment. All fail.

*First*, the private plaintiffs assert that the Republican Committees' expenditure of "resources on voter turnout programs" does not satisfy the impairment requirement because the Committees purportedly "do not claim that—let alone explain how—this lawsuit will impact their voter turnout efforts in any way." Pls.' Br. 15. Of course, the United States conceded just the opposite. *See* U.S. Br. 19–20 ("[The Committees] may need to train volunteers and educate voters . . . on the applicable rules."). In any event, the Republican Committees have explained that an injunction against SB 1 "may impair . . . their interests in participating in elections on behalf of themselves and their voters, candidates, volunteers, and poll watchers" by requiring them "to change their voter-education and mobilization programs and to reallocate, or even increase, their expenditure of resources towards . . . turning out voters." Br. 28.

*Second*, the private plaintiffs acknowledge that "certain Plaintiffs made similar allegations of expenditures for voter participation programs to support their standing to sue." Pls.' Br. 15. Nonetheless, they fault

the Republican Committees for not making the same allegation as those plaintiffs that "SB 1 force[s] them to incur those costs by . . . making [voting] more difficult for Plaintiffs and their constituents." *Id.* The Republican Committees, however, seek to *defend*, not *challenge*, SB 1 and do not allege any injury flowing from SB 1.

Moreover, the private plaintiffs erroneously conflate Article III's rigorous standing requirements and Rule 24(a)(2)'s liberal intervention rules. To demonstrate their standing to sue, the private plaintiffs must allege (and ultimately prove) that they have suffered a "concrete and particularized" "injury in fact" from SB 1. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). By contrast, in order to intervene of right, the Republican Committees need not prove that they have a concrete injury in fact, "an enforceable legal entitlement," or "standing" under Article III. *Texas*, 805 F.3d at 659. Instead, they must show only that an injunction in the case "may" impair their interests in SB 1, *Brumfield*, 749 F.3d at 344—a showing they have easily made, *see* Br. 27–32.

*Third*, the private plaintiffs once again misapprehend the Republican Committees' minimal burden when they contend that the Committees "never actually claim that their candidates' prospects would

improve in any appreciable way if SB 1 were upheld (or that Republicans would fare worse if the law were struck down)." Pls.' Br. 16. The United States commits the same misapprehension, arguing that the Committees "have not shown that a decision enjoining [SB 1] will impair or impede their stated interests in 'participating' in Texas's contests to elect Republican candidates or maintaining the 'competitive environment' for doing so." U.S. Br. 19.

At the threshold, the private plaintiffs and the United States are simply wrong on the law: the Republican Committees need not show that their interests "would" or "*will* be impaired" by disposition of this action. *Brumfield*, 749 F.3d at 344 (emphasis in original). Instead, they must show—and have shown—that disposition of the action "'may' impair or impede their ability to protect their interests." *Id.*; *see* Br. 27–32.

Moreover, contrary to the private plaintiffs' bald assertion, the Republican Committees have shown "that this challenge to SB 1 could 'impair or impede' the chances of Republicans getting elected." Pls.' Br. 16. Indeed, enjoining "one or more provisions of SB 1 could threaten prospective interference with Republican electoral opportunities or even change the results of some future election in Texas." Br. 30 (citation and

internal punctuation omitted).  It is easy to see how: such an injunction could "fundamentally alter" the competitive electoral environment in Texas and could subject the Republican Committees and their voters, candidates, and volunteers to a "broader range of competitive tactics" (such as vote harvesting) from their opponents than Texas law "would otherwise allow."  *Shays*, 414 F.3d at 86; *see also* Br. 27–30.

*Finally*, the private plaintiffs and the United States again erroneously conflate standing requirements and intervention rules when they attempt to distinguish the D.C. Circuit's decision in *Shays v. FEC*. To be sure, the plaintiffs in *Shays* proved standing to challenge the "illegal structuring of a competitive environment" surrounding elections. Pls.' Br. 17.  *Shays* therefore demonstrates that an interest in a "competitive environment" *is* a cognizable interest even for Article III purposes, *see, e.g.*, *Shays*, 414 F.3d at 85; *see also Lujan*, 504 U.S. at 563, so such an interest also suffices for Rule 24(a)(2)'s minimal interest standard, *see, e.g.*, *Texas*, 805 F.3d at 661; *Brumfield*, 749 F.3d at 344 n.2. And while "illegal structuring" of a competitive electoral environment is a *sufficient* injury in fact to confer *standing*, *see, e.g.*, *Shays*, 414 F.3d at 85; *Lujan*, 504 U.S. at 560, it is not a *necessary* impairment for

*intervention of right*, *see, e.g.*, *Brumfield*, 749 F.3d at 344; Br. 27–32.  In any event, the Republican Committees maintain that SB 1 is a commonsense and constitutional statute that advances their interests in Texas—so they *have* argued that invalidating one or more provisions of SB 1 may be "disadvantageous to them," U.S. Br. 14–15; *see* Br. 27–32, and may constitute an "illegal structuring of [the] competitive environment" in which they and their voters, candidates, and volunteers exercise their constitutional rights to vote and seek to win elections, Pls.' Br. 17; *see* Br. 27–32.  The Republican Committees satisfy Rule 24(a)(2)'s impairment requirement.

### 3.    No Party To The Case Adequately Represents The Republican Committees' Interests In SB 1

The existing parties "'may be' inadequate" to represent the Republican Committees' clear and cognizable interests in SB 1 because no party so much as shares, much less represents, those interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Texas*, 805 F.3d at 661; Br. 33–40.  Indeed, no party to this litigation shares the Republican Committees' interests in supporting Republican voters and volunteers, Republican candidates winning elections, maintaining the competitive electoral environment created by

SB 1, and complying with SB 1's regulation of poll workers. *See* Br. 33. The Republican Committees therefore have satisfied their "minimal" burden on this element, *Texas*, 805 F.3d at 661; *Brumfield*, 749 F.3d at 345, as well as the plain language of Rule 24(a)(2), Fed. R. Civ. P. 24(a)(2) (framing requirement as whether "existing parties adequately represent [the movant's] interest"); *see also* Br. 33–40.

The private plaintiffs and the United States do not argue that any party shares the Republican Committees' unique and cognizable interests in SB 1. Nevertheless, they make three arguments that the State Defendants adequately represent the Republican Committees' interests, but none succeeds.

*First*, the private plaintiffs acknowledge that the State Defendants have moved for, and may be granted, dismissal from this lawsuit, and that such dismissal would leave no party to defend SB 1 or this litigation on a statewide basis. *See* Pls.' Br. 29–30. As the Republican Committees have explained, this possibility of dismissal demonstrates that the State Defendants are not adequate representatives. *See* Br. 38–40. The private plaintiffs take a contrary position, suggesting that the State Defendants "would retain the right to defend the constitutionality of SB

1 by seeking intervention" and the Republican Committees could later "seek reconsideration of the order denying [their] intervention." Pls.' Br. 29–30; *compare also* U.S. Br. 27 n.7. The private plaintiffs, however, do not explain *why* the State Defendants would intervene back into this litigation after securing dismissal or how the purported reconsideration option comports with Rule 24(a)(2)'s timeliness requirement. *See* Pls.' Br. 29–30. To the contrary, "[i]t would indeed be a questionable rule" if, as the private plaintiffs suggest, "prospective intervenors [must] wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Brumfield*, 749 F.3d at 344–45.

*Second*, the private plaintiffs and the United States contend that a presumption of adequacy applies because the State Defendants and the Republican Committees currently share the same ultimate objective of upholding SB 1. *See* Pls.' Br. 22–25; U.S. Br. 24. But the Republican Committees have satisfied *Brumfield* and rebutted that presumption by showing that their and the State Defendants' interests "may not align precisely," that the State Defendants have "more extensive interests" than the Committees, and that the State Defendants have "stak[ed] out a position" seeking dismissal that differs from any position the

Committees may assert. *Brumfield*, 749 F.3d at 345–46; *see also Wal-Mart Stores, Inc.*, 834 F.3d at 569 (state defendant's representation was inadequate where the putative intervenor's private interests "are narrower than" the state's "broad public mission" and the putative intervenor and the state advanced different legal positions); Br. 34–40.

The cases cited by the private plaintiffs and the United States do not affect, much less alter, this showing. In two of the cases from this circuit, the Court *granted* intervention, *see Edwards*, 78 F.3d 983 (cited at U.S. Br. 22); *Texas*, 805 F.3d at 662, and in one even called into question the "adversity of interest, collusion, or nonfeasance" test that the private plaintiffs and the United States advocate, *Texas*, 805 F.3d at 662 n.5; *see* Pls.' Br. 27; U.S. Br. 22. The other cases from this circuit all involved denial of intervention where the party had not staked out a position contrary to the putative intervenor's interest and the difference in the party's and the putative intervenor's interest was not implicated by the narrow question presented. *See Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 579 (5th Cir. 2007) (cited at Pls.' Br. 22); *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987) (cited at Pls.' Br. 22).

17

Those cases have no bearing here, where the Republican Committees have shown that the divergence of their and the State Defendants' interests "might" "result in inadequate representation." *Brumfield*, 749 F.3d at 346; *see also* Br. 34–40.

The out-of-circuit cases cited by the private plaintiffs and the United States suffer similar flaws. In one of those cases, "two state entities were trying to speak on behalf of the State *at the same time*"; no assertion of a separate private interest was involved. *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 800 (7th Cir. 2019) (emphasis in original) (cited at Pls.' Br. 21). In others, the putative intervenor did not establish any a divergence of interests with the state defendants. *See Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (noting that the putative intervenors were "motivated by the same underlying concerns" as the state) (cited at Pls.' Br. 21); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (cited at Pls.' Br. 21); *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) (cited at Pls.' Br. 21). Those cases therefore have no bearing on the Republican Committees' showing that the State Defendants may be inadequate representatives here. *See* Br. 34–40.

*Third*, the private plaintiffs and the United States assert that the Republican Committees "offer no . . . argument for why the governmental-representative presumption does not apply" here. Pls.' Br. 26; *see also* U.S. Br. 23. This assertion is baffling, since the Republican Committees devoted several pages of their opening brief to explaining why the State Defendants as "governmental entities" may not adequately represent their interests. Br. 35; *see also id.* at 34–40. In any event, the private plaintiffs and the United States concede that any governmental-representative presumption is defeated where the putative intervenor shows "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." Pls.' Br. 27 (quoting *Texas*, 805 F.3d at 662); *see* U.S. Br. 22 (same); *see also* Fed. R. Civ. P. 24(a)(2) (requiring showing that "existing parties" do not "adequately represent" the putative intervenor's "interest"); *Hopwood v. Texas*, 21 F.3d 603, 606 (5th Cir. 1994) (intervention denied where putative intervenors "have not met their burden of demonstrating that they have a separate interest that the State will not adequately represent") (cited at U.S. Br. 22). That is precisely the showing that the Republican Committees have made. *See* Br. 34–40.

For this same reason, the United States' extended discussion of *Veasey v. Perry*, 577 F. App'x 261 (5th Cir. 2014), *see* U.S. Br. 27–29, actually underscores that intervention of right is warranted here. *Veasey* recognized that *Brumfield* granted intervention in a case involving a state-government defendant, even though the defendant and the putative intervenor "had the same [ultimate] objective," because the state's interests were "broader" than the putative intervenor's interests and the defendant and the putative intervenor raised different "jurisdictional arguments." *Veasey*, 577 F. App'x at 263. In *Veasey*, however, the putative intervenor failed to raise a cognizable interest different than the state's interests, and the state did not "stak[e] out a position" different from the putative intervenor's position. *Brumfield*, 749 F.3d at 346; *see also Veasey*, 577 F. App'x at 263. The Court's unpublished disposition in *Veasey* therefore does not undermine *Brumfield*, let alone support denial of intervention in a case, such as this one, where *Brumfield* is satisfied. *See* Br. 34–40. The Court should grant intervention of right.

## B. The Private Plaintiffs And The United States Fail To Rehabilitate The District Court's Legal Errors

The district court's erroneous denial of intervention of right rested on six assertions, all of which were tainted by legal error. *See* Br. 40–45.

The private plaintiffs and the United States try, but fail, to rehabilitate those errors.

*First*, the private plaintiffs and the United States note that the district court's suggestions that a putative intervenor must demonstrate "standing" and that the State is "ably represented" by the Attorney General were made at a hearing instead of in a written order.  U.S. Br. 30; Pls.' Br. 30–31, 34.  But they do not contend that the Republican Committees were required to demonstrate standing in order to intervene or that the Attorney General's able representation of the *State's* interest has any bearing on the Republican Committees' right to intervene to protect their *own* interests.  *See* U.S. Br. 30; Pls.' Br. 30–31, 34; *see also* Br. 40.

*Second*, the private plaintiffs and the United States attempt to defend the district court's conclusion that the Republican Committees asserted a mere "ideological interest" in SB 1 by noting that the Committees voiced their support for "free and fair elections" on behalf of all Texans in their motion to intervene.  *See* Pls.' Br. 32; U.S. Br. 30–31. The private plaintiffs and the United States, however, are wrong when they suggest that this support was the "primary basis for intervention"

that the Republican Committees advanced.  U.S. Br. 30; *see also* Pls.' Br. 32.  In fact, the only references to "fair elections" in the Republican Committees' motion appeared in the introductory paragraphs; no references appeared anywhere in the argument section of that motion. ROA.850–858.  The district court's myopic focus on the "free and fair elections" point was therefore error.  *See* Br. 41.

*Third*, the private plaintiffs and the United States express agreement with the district court's conclusion that the Republican Committees failed to show that their interest "in electing particular candidates" is connected to these "proceedings."  U.S. Br. 31; Pls.' Br. 33. Thus, like the district court, the private plaintiffs and the United States overlook the Republican Committees' fulsome showing—both in the district court and on appeal—that this interest may be impaired by an injunction against one or more provisions of SB 1.  *See* Br. 18–33, 42; *see also supra* Part I.A.2.

*Fourth*, the United States recognizes that the district court's prognostication that granting the Republican Committees intervention would lead to a parade of intervenors is irreconcilable with Rule 24(a)(2) and the reality of this case.  *See* U.S. Br. at 31–32; *see also* Br. 42–43.

22

The private plaintiffs likewise agree that each putative intervenor "need[s] to satisfy the . . . Rule 24(a) factors." Pls.' Br. 33–34. The United States and the private plaintiffs therefore attempt to rewrite that portion of the district court's order, arguing respectively that "context makes clear" that the district court instead was rehashing its conclusions that the Republican Committees had invoked only "general[ized]" interests, U.S. Br. 32, or had failed to satisfy the impairment requirement, Pls.' Br. 33–34. But *both* conclusions were erroneous, *see supra* Part I.A.1–2, so neither effort to rewrite the district court's order fixes its legal errors in misconstruing the Republican Committees' showing and misapplying Rule 24(a)(2), *see* Br. 42–43.

*Finally*, neither the private plaintiffs nor the United States argue, much less establish, that the district court applied the correct legal standard when it required the Republican Committees to show that the State Defendants' representation of their private interests "would" be inadequate. Pls.' Br. 34–35; U.S. Br. 32. The district court's application of an erroneous legal standard warrants reversal here, where the Republican Committees have shown that the State Defendants'

representation "may" be inadequate, which "is all that the rule requires."

*Brumfield*, 749 F.3d at 346; *see also* Br. 44–45; *supra* Part I.A.3.

## CONCLUSION

The Court should reverse the decision below and grant the Republican Committees intervention.


Dated: January 26, 2022                    Respectfully submitted,

                                           */s/ John M. Gore*

                                           John M. Gore
                                             *Counsel of Record*
                                           E. Stewart Crosland
                                           S. Matthew Krsacok*
                                           JONES DAY
                                           51 Louisiana Ave., N.W.
                                           Washington, D.C.  20001-2113
                                           (202) 879-3939
                                           jmgore@jonesday.com

                                           *Not admitted in DC;
                                           supervised by a licensed DC bar
                                           member

            *Counsel for Movants-Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the items exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 4,654 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Century Schoolbook font.

Dated: January 26, 2022                    Respectfully submitted,

*/s/ John M. Gore*

*Counsel of Record for Movants-Appellants*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: January 26, 2022                Respectfully submitted,

*/s/ John M. Gore*

*Counsel of Record for Movants-Appellants*

## CERTIFICATE OF SERVICE

I certify that on January 26, 2022, I served the foregoing Appellants' Reply Brief on counsel for all parties via the Court's CM/ECF system.


Dated: January 26, 2022                    Respectfully submitted,

                                           */s/ John M. Gore*

                                           *Counsel of Record for Movants-Appellants*